[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15259

_____

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
APRIL 18, 2012
JOHN LEY

D.C. Docket No. 6:04-cv-02661-CLS-HGD


DAVID LEE ROBERTS,

Petitioner - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama - Jasper

_____

(April 18, 2012)

Before BARKETT, HULL and WILSON, Circuit Judges.

PER CURIAM:

David Roberts, an Alabama state prisoner, appeals from the district court's

denial of his 28 U.S.C. § 2254 habeas petition challenging his conviction for capital murder. We issued a Certificate of Appealability on the following three issues: (1) whether Roberts's trial counsel was ineffective for failing to investigate and/or present evidence to support an insanity defense despite entering a plea of "not guilty and not guilty by reason of insanity"; (2) whether the trial court improperly refused to instruct Roberts's jury on the lesser included offense of felony murder; and (3) whether the state court erred when it reversed Roberts's death sentence but remanded the case for a new penalty-phase hearing before the trial court, not before a jury.[1] Roberts argues that the state court's resolution of each of these issues was contrary to or involved an unreasonable application of clearly established federal law.

## I. BACKGROUND

Roberts was convicted in December 1992 for two counts of capital murder and following the conclusion of the penalty phase hearing, the jury recommended that he be sentenced to life without parole by a majority vote of seven to five. Nearly two years later in May 1994, the trial court held a sentencing hearing and rejected the jury's recommendation, sentencing Roberts to death.

---

[1] We also granted the COA on a fourth issue, which Roberts does not address in his brief, thus we presume that he does not wish to pursue this claim and we deem it to have been abandoned.

The facts of the offense as recounted by the state appellate court on direct

appeal are as follows:

> Roberts had been a houseguest of Wendell Satterfield. On April 22, 1992, Satterfield's girlfriend, Annetra Jones, was sleeping on a couch in Satterfield's den. Roberts left his job and went to Satterfield's residence around noon on that day. He packed his belongings, stole money from the victim's wallet, and shot her three times in the head with a .22 caliber rifle while she slept. Jones died within seconds. Roberts poured flammable liquid on her body and on the floor in the den, then set fire to a piece of paper he had placed under the couch. In the bedroom in which Roberts had stayed, which was in the basement of Satterfield's house, Roberts set another fire, causing major damage to the room and sending smoke throughout the house. Roberts left the house, taking with him a variety of items, such as the murder weapon and other guns. He hid this evidence, but later led the police to the hiding place.

> Law enforcement authorities questioned Roberts and he gave several statements. He admitted shooting Jones and setting Satterfield's house on fire. In his last statement, Roberts said that he had set the house on fire to get back at Satterfield for threatening his parents; he said that he did not know that Jones would be at the house and he did not know why he shot her.

> At the sentencing hearing before the jury, the State presented evidence that Roberts had previously been convicted of second degree burglary and first degree theft, and that he had been on parole for less than two months when he committed this crime. Roberts's brother, Terry, and his mother, Brenda, testified that Roberts was nervous, slept poorly, and had a history of drug abuse. Terry Roberts also testified that two days before the murder, Satterfield made what could be construed as a threat against their father.

> At the sentence hearing before the court, Roberts testified that he was sorry about what had happened. He stated that an "older individual"

had threatened to kill his parents, that the pressure had built up over time, that he had no one to turn to for help, and that he did what he thought he needed to do at the time. He also testified that the "older individual" told him to burn the house and to shoot Annetra Jones.[2]

Roberts's conviction was affirmed on direct appeal, however, his sentence was reversed and remanded because the trial court had improperly excluded certain evidence during the sentencing hearing.[3]  Upon remand, the trial court held another sentencing hearing, without a jury, and again sentenced Roberts to death.[4] After further clarification, the trial court's sentencing order was affirmed by both the appellate court,[5] and the Alabama Supreme Court.[6]  The United States Supreme Court denied certiorari.[7]

Roberts timely filed his state petition for post-conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure ("Rule 32 Petition"). Following an evidentiary hearing, the state trial court[8] entered an order denying

---

[2] Roberts v. State, 735 So. 2d 1244, 1249–50 (Ala. Crim. App. 1997).

[3] Id. at 1266.

[4] Id.

[5] Roberts v. State, 735 So. 2d 1244, 1269–70 (Ala. Crim. App. 1997).

[6] Ex parte Roberts, 735 So. 2d 1270, 1280 (Ala. 1999).

[7] Roberts v. Alabama, 528 U.S. 939 (1999).

[8] The judge who presided over Roberts's trial and who, contrary to the jury's advisory sentence, sentenced him to death, was the same judge who presided over Roberts's Rule 32 proceedings and who denied all of his post-conviction claims.

relief on every claim. Roberts raised only three claims of ineffective assistance of counsel on appeal, which were denied by the state appellate court and for which a writ of certiorari was not granted. Roberts filed his federal petition for writ of habeas corpus, which the district court denied, and we granted a certificate of appealability on the issues noted above.

## II. STANDARD OF REVIEW

When reviewing the district court's grant or denial of habeas relief, we review its conclusions on legal questions and mixed questions of law and fact de novo and its findings of fact for clear error. Walls v. Buss, 658 F.3d 1274, 1277 (11th Cir. 2011). Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 1-4-132, 110 Stat. 1214 ("AEDPA"), a federal court may not grant habeas relief unless the state court's decision on the merits of the petitioner's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has explained the requirements of § 2254(d) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts. Under the "unreasonable application" clause, a federal habeas

5

court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel During the Guilt Phase of Trial

Roberts argues that his Sixth Amendment right to effective assistance of trial counsel was violated because his trial counsel, Ed Odum, asserted a plea of "not guilty or not guilty by reason of insanity" in the presence of the jury but failed to investigate or to present any evidence in support of this plea. The state argues that the failure to investigate mental insanity is procedurally defaulted.

Under AEDPA, a federal habeas petition may not be granted as to any claim unless the petitioner has exhausted available state court remedies regarding that claim. See 28 U.S.C. § 2254(b), (c). "[T]he federal claim must be fairly presented to the state courts so that the state courts have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding." Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (internal quotation marks omitted) (citation omitted). In order to determine whether a claim has been exhausted, we look to the entire state court record and not just the state court's order, which may be silent as to a specific allegation of ineffective assistance of counsel. See id. at

6

1369 ("[Petitioner] persuasively argues that he fairly presented several claims of ineffective assistance of counsel through his direct testimony, the examination of his post-trial attorney, the entry of his *pro se* memorandum into evidence, and the filing of a post-hearing brief.").

We conclude that Roberts fairly presented to the state post-conviction court an allegation of ineffective assistance of counsel for failure to investigate the affirmative defense of insanity. Count I of his Rule 32 Petition was entitled "Mr. Roberts Was Denied Effective Assistance of Counsel Before, During, and after His Trial." In support of that count, Roberts cited to <u>Strickland</u> and to the circuit's law that defense counsel has a duty to thoroughly investigate the State's evidence and plausible defense theories. He alleged that Odum failed to meet with him for "the length of time necessary to conduct adequate investigation of the State's case, investigate defense witnesses, or to adequately prepare a defense for trial." Roberts also alleged that Odum was ineffective for failing to petition for and obtain expert assistance to assist with trial preparation and that he "should have hired an independent psychiatric expert to evaluate Mr. Roberts generally for signs of mental impairment relevant to guilt and mitigation." As well, he alleged that Odum failed to develop a theory of the case and specifically was ineffective for entering a plea of not guilty by reason of insanity and then failing to present any

7

evidence in support of that theory. During the state court evidentiary hearing, Roberts presented evidence, primarily through the testimony of Odum, that Odum failed to investigate the insanity defense despite other evidence of Roberts's mental illness. Finally, Roberts's state post-conviction appellate brief asserted that his trial counsel was ineffective for failing to investigate the insanity defense: "The Rule 32 Petition pointed out this lead the jury to believe indeed that Mr. Roberts was guilty by raising that affirmative defense with no evidence to present at trial. Odum said prior to the trial he had done no special preparation for raising such plea." We therefore conclude that this claim is not procedurally defaulted, and accordingly, must decide whether the state court unreasonably applied clearly established federal law in denying Roberts's claim of ineffective assistance of counsel for failure to investigate and failure to present evidence in support of his defense of insanity.

In addressing Roberts's claim of ineffective assistance of counsel, the state appellate court explained, "Roberts contends that his trail counsel was ineffective for entering a plea of not guilty by mental disease or defect in front of the jury and then failing to present any evidence to support that plea." The court then cited to the transcript of the trial proceedings that concerned the entry of the plea of not guilty by reason of insanity. In pertinent part, the following exchange between the

8

judge and the defense counsel occurred.

> THE COURT: You are charged under Count 1 of the indictment of the offense of murder during robbery; to that how do you plead?
>
> [Trial counsel] : Not guilty. Not guilty by reason of insanity.
>
> THE COURT: Under Count 2 of the indictment you are charged with murder in connection with an arson in the second degree. To that charge how do you plead?
>
> [Trial counsel] : Not guilty plea and not guilty by reason of insanity.
>
> THE COURT: You may be seated.
>
> Ladies and gentlemen, we are calling for trial at this time the case of State of Alabama vs. David Lee Roberts who is charged with two counts of capital murder.

The state appellate court then noted that the trial court began its qualification of the venire.

No one disputes that Roberts's trial counsel never presented any evidence of insanity and indeed his trial counsel testified at the Rule 32 evidentiary hearing that his defense strategy was to create reasonable doubt that Roberts committed the murder. Nonetheless, the state appellate court, agreeing with the Rule 32 trial court's findings, concluded that Roberts failed to prove that his trial counsel was ineffective. First, the state court noted that it appeared that Roberts and his trial counsel were at the bench when the pleas of not guilty by reason on insanity were

entered.  Second, the state court concluded that it was clear that the jury venire was in the courtroom when the plea was entered, but further concluded that there was no evidence to support a finding that the prospective jurors heard the entry of the insanity plea.  The state court based this conclusion in part on Odum's Rule 32 testimony wherein he stated that the arraignment took place at the bench and that he did not know "who heard what."  The state court also credited trial counsel's testimony that he believed that he would have been speaking in a hushed tone and, thus, the state appellate court determined that Roberts presented no evidence at his Rule 32 hearing that the prospective jurors heard the entry of the insanity plea or that, if they did, they understood this to be an admission of guilt.  Finally, the state appellate court credited the Rule 32 trial court's finding that the plea was withdrawn before the case was sent to the jury, which was never charged on the defense of insanity.  Based on these conclusions about the record evidence, the state appellate court concluded that Roberts was not prejudiced by the entry of the insanity plea and therefore denied his claim of ineffective assistance of counsel.

In order to establish ineffective assistance of counsel,  Roberts must show that his counsel's performance was deficient and that the deficiency prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  With respect to deficient performance, Roberts must show that his "counsel's representation fell

below an objective standard of reasonableness." Id. at 688. As to prejudice, he must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

We need not address the question of deficient performance because we cannot say that the state court's application of Strickland's prejudice standard was unreasonable. Roberts argued to the state court, in part, that he was prejudiced by his counsel's entry of the not guilty by reason of insanity plea because such a plea would have been treated by the jury as an admission that he committed the charged offense. And, he argues, when the jury then heard no evidence of his insanity, it would have had no reason not to find him guilty given that he essentially had admitted the offense conduct. Initially, we cannot say that the state court unreasonably applied Strickland based on its finding that the jury more likely than not never heard the plea. Given this finding, there would have been no reason to presume that the jury had the impression that Roberts had admitted the offense conduct, and therefore no prejudice could have resulted from the entry of the insanity plea.

Roberts, however, also argues that the state court never addressed prejudice as it pertained to his claim that his trial counsel was ineffective for failing to

investigate his mental state in support of the insanity defense.  Based on this claim, Roberts argues that "a proper prejudice analysis would require a review of what evidence counsel could have presented to support [his] insanity plea, if counsel had conducted an adequate investigation before the entry of the plea." The appropriate prejudice analysis for this claim would require the state court to consider whether there is a reasonable probability that Roberts's trial would have resulted in his being found not guilty by reason of insanity had his trial counsel properly investigated and presented an insanity defense.  See e.g. Weeks v. Jones, 26 F.3d 1030, 1038–39 (11th Cir. 1994) (explaining that to establish prejudice petitioner "would have to establish a reasonable probability that his trial counsel's failure to discover and review his mental history from [the hospital] and, thus, to present an insanity defense, would have resulted in his being found not guilty by reason of insanity").  In assessing the probability that the outcome would have been different, the reviewing court must consider the totality of the relevant evidence before the judge or jury as well as the evidence adduced at the habeas proceedings.  See Wiggins v. Smith, 539 U.S. 510, 536 (2003).

As to this claim, we agree with Roberts that the state court never addressed whether Roberts was prejudiced by Odum's failure to investigate and present evidence of his insanity and therefore, our review is controlled by Strickland only,

12

without the added deference of AEDPA. See Rompilla v. Beard, 545 U.S. 374, 390 (2005). However, after considering the evidence that Roberts contends Odum should have discovered and/or presented to establish his insanity, we cannot say that there is a reasonable probability that this evidence would have changed the outcome of his trial such that he was prejudiced by Odum's failure to investigate the defense of insanity. Roberts relies on the court-ordered psychiatric report from Taylor Hardin Secure Medical Facility and the testimony of Dr. Allen Shealy that was presented at his second sentencing hearing to establish that he was insane at the time of the offense. Although the Taylor Hardin report identified that Roberts readily admitted to significant substance abuse in the past, had self-reported four prior suicide attempts, and reported occasionally hearing a high-pitched tone, it concluded that Roberts's personality disorder and past substance abuse would not substantially interfere with his understanding of right from wrong. Specifically discussing his mental state at the time of the offense, the report stated that Roberts did not have a history of a "major debilitating mental illness" and that "[t]here is no evidence that [Roberts] was suffering from such during the time of the alleged offense which would have substantially interfered with his understanding of right from wrong." See Weeks, 26 F.3d at 1038–39 ("If Weeks was not suffering from a mental disease or defect at the time of the crime or at trial, then he was not

13

prejudiced by his counsel's failure to present the mental history that he contends should have been submitted.").

Roberts also relies on the testimony of Dr. Shealy which he asserts is the type of evidence that Odum would have uncovered had he not been deficient in failing to investigate Roberts's mental status at the time of the offense. Dr. Shealy testified, at Roberts's second sentencing hearing, that he did not believe that Roberts knew what happened at the time of the offense given the numerous contradictory statements made by Roberts about the events. Dr. Shealy attributed Roberts's memory lapses to his excessive alcohol and drug use, diagnosing him with "cannabis intoxication." However, when asked whether Roberts was insane at the time of the offense, Dr. Shealy testified that "[i]t is difficult to reach a conclusion if a person doesn't know what happened. Difficult to reach a conclusion about whether he knew right from wrong if he didn't know what happened number one." Finally, Roberts points to the testimony of his original trial counsel, Samuel Masdon, who stated that Roberts's versions of the events changed each time they talked, which Masdon attributed to Roberts's LSD use.

In Alabama, the defendant bears the burden of proving the defense of insanity by clear and convincing evidence. See Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010) (citing Ala. Code § 13A-3-1(a), (c)). Specifically the

14

defendant must show that "at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts." Ala. Code § 13A-3-1(a). We have explained that this means that "in order to establish the affirmative defense of insanity, the defendant must establish that he suffered from a mental disease." Williams, 598 F.3d at 789.

Given Alabama's standard for establishing an insanity defense, we cannot say that, had the jury heard all of the evidence, there is a reasonable probability that the jury would have concluded that Roberts was insane at the time of the offense. The report from Taylor Hardin specifically concluded that Roberts was not suffering from any debilitating mental illness at the time of the crime and that there was nothing to indicate that he could not distinguish right from wrong. Dr. Shealy's and Masdon's testimony at most establish that Roberts was extremely intoxicated at the time of the offense, but provide no basis for concluding that as the result of a severe mental defect or illness that he could not appreciate the wrongfulness of his actions. See id. (voluntary intoxication is not an affirmative defense to capital murder in Alabama).

Accordingly, because Roberts cannot show prejudice based on Odum's failure to investigate and to present evidence in support of the insanity defense, the

15

district court's denial of his Strickland claim is affirmed.

**B.** **Entitlement to an Instruction on the Lesser Included Offense of Felony Murder**

Roberts next argues that the state trial court's failure to instruct the jury on the offense of felony murder violated his right to a fair trial and that the state appellate court's decision was an unreasonable application of Beck v. Alabama, 447 U.S. 625 (1980). At the conclusion of the guilt phase of Roberts's trial, the trial court instructed the jury on the elements of capital murder during the course of a robbery and during the course of arson and on the lesser-included offense of non-capital intentional murder. The trial court also instructed the jury that it could return a verdict of not-guilty. On direct appeal, Roberts argued that there was evidence regarding his state of mind at the time of the offense, which should have allowed the jury to consider whether Roberts possessed the requisite specific intent for capital murder, and therefore the lesser-included offense of felony murder should have been part of the jury instructions. The state appellate court considered this claim on the merits, recognizing that "[a] jury charge on a lesser included offense should be given when there is a reasonable theory from the evidence to support it." Roberts v. State, 735 So. 2d 1244, 1252 (Ala. Crim. App. 1997). The state appellate court went on to conclude that the instruction was not

16

warranted because "Roberts admitted in his statement that he intentionally shot the victim repeatedly to kill her." Id. at 1253.

In Beck, the Supreme Court held that Alabama was constitutionally prohibited from absolutely barring a jury in a capital case from considering a lesser-included offense to that of capital murder. 447 U.S. at 638. The Court explained that "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—" the failure to provide the jury with another option of a lesser-included offense leads to the intolerable risk of an unwarranted conviction for a capital crime. Id. at 637.

Here, Roberts argues that the evidence at his trial about his debilitated mental state left doubt about whether he formed the specific intent to kill necessary for a conviction of either capital murder or non-capital murder, and therefore, the failure to give an instruction on felony murder—an offense that does not require intent to kill—lead to the intolerable risk of his unwarranted conviction for murder requiring specific intent. The Supreme Court's later decision in Schad v. Arizona, 501 U.S. 624 (1991), however, seems to foreclose Roberts's argument. In Schad, the Court explained that the petitioner in that case could not "succeed under the strict holding of Beck," because the jury had the

17

option of finding the defendant "guilty of a lesser included noncapital offense, second-degree murder." 501 U.S. at 646. The Court was also not willing to extend the due process principles underlying Beck to conclude that a defendant in a capital case is entitled to instructions on any lesser-included offense explaining that in Beck, it "repeatedly stressed the all-or-nothing nature of the decision with which the jury was presented." Id. The Court concluded that because the jury in Schad was instructed on second degree murder, and therefore "was not faced with an all-or-nothing choice between the offense of conviction (capital murder) and innocence[,]" Beck was not implicated. Id. at 647.

Ultimately, we cannot say that the state appellate court's denial of Roberts's Beck claim in this case was an unreasonable application of Supreme Court precedent. The state court identified the correct standard for requiring an instruction on a lesser-included offense, i.e. "when there is a reasonable theory from the evidence to support it," however, it determined that the evidence did not support the conclusion that Roberts lacked intent to kill as he gave a statement that "he intentionally shot the victim repeatedly to kill her." Roberts, 735 So. 2d at 1252–53. Accordingly, we cannot say that the state court's resolution of this claim involved an unreasonable application of Supreme Court precedent.

C. **Roberts's Resentencing in a Judge-Only Proceeding**

18

Roberts's final claim is that the state appellate court on direct appeal, having found reversible error in the penalty phase hearing, erred in not ordering the empaneling of a new jury to conduct Roberts's resentencing upon remand. Roberts seeks habeas relief on the ground that the failure to require his resentencing before a jury and instead permitting only the judge to conduct a new penalty phase hearing was an unreasonable application of Harris v. Alabama, 513 U.S. 504 (1995). The Alabama Supreme Court, relying on Harris, reviewed and rejected this claim on direct appeal. Ex Parte Roberts, 735 So. 2d at 1279.

At the conclusion of Roberts's original penalty phase hearing, the jury recommended by a vote of 7 to 5 that Roberts be sentenced to life in prison without the possibility of parole. Under Alabama law, a capital defendant has the statutory right to a sentencing hearing before a jury, for the jury to find aggravating and mitigating factors and render an advisory verdict based on those findings. See Ala. Code § 13A-5-46(a). Alabama law also provides that the judge must consider the jury's advisory verdict, which is not binding on the trial judge. Id. § 13A-5-47(e). Despite the recommendation of seven of the twelve jurors that Roberts be given a sentence of life without parole, the trial judge in Roberts's case sentenced him to death.

Roberts appealed his conviction and sentence and the state appellate court

reversed the death sentence concluding that the trial court prevented him from presenting evidence which may have established certain statutory mitigating factors. The state appellate court remanded for resentencing but specifically ordered that the hearing need not be conducted in front of a jury and could be held before only a judge. Roberts had a new sentencing hearing before the trial judge, who again sentenced him to death, and after a second remand for further clarification, that death sentence was affirmed.

Roberts argues that a sentencing judge must be able to consider a constitutionally valid jury recommendation and that the advisory verdict in his case did not meet that standard because the jury was not permitted to hear certain mitigating evidence. We, however, cannot say that the state appellate court's failure to order resentencing before a jury and the Alabama Supreme Court's affirmance of that decision was an unreasonable application of Supreme Court precedent. In Spaziano v. Florida, 468 U.S. 447 (1984), the Supreme Court specifically held that there is no constitutional right to jury sentencing in a capital case. Roberts's reliance on Harris does not persuade us otherwise. In Harris, the Supreme Court, in addressing Alabama's capital sentencing scheme, asked "whether the Eighth Amendment to the Constitution requires the sentencing judge to ascribe any particular weight to the verdict of an advisory jury." 513 U.S. at

509. In concluding that it does not, the Court noted that the Constitution permits the trial judge, acting alone, to impose the death penalty and therefore, it would not be unconstitutional to permit the trial judge to decide what weight to give to the jury's advisory verdict. Id. at 515.

Moreover, the original jury recommendation was 7 to 5 in favor of a life sentence, a determination that could not have been improved upon by a second jury other than for more jurors to recommend life. However, because Alabama law does not require the judge to follow the jury's recommendation no matter the number of jurors recommending life, we cannot state that the Alabama Supreme Court's affirmance of the appellate court's remand for judge-only resentencing was an unreasonable application of clearly established federal law.

**AFFIRMED.**

BARKETT, Circuit Judge, concurring:

I concur in the majority's opinion and write separately only to voice my agreement with Justice Stephens's recognition in <u>Harris v. Alabama</u>, 513 U.S. 504 (1995), of the perversity of Alabama's judicial override system in capital sentencing. As Justice Stephens noted, Alabama is one of the four states that allows judicial override of a jury's recommendation of a life sentence, and is the <u>only</u> state in the nation that leaves it to the judge's "unbridled discretion" to do so. <u>See</u> <u>Harris</u>, 513 U.S. at 515–16 (Stevens, J., dissenting). Even though the majority of jurors in Roberts's case recommended that he receive a life sentence, Alabama's capital sentencing regime permitted the judge to reject, without <u>any</u> guiding standard, that recommendation in favor of a sentence of death, which is what the judge in this case did.

The practical consequence of Alabama's system is exactly as Justice Stephens described:

> The defendant's life is twice put in jeopardy, once before the jury and again in the repeat performance before a different, and likely less sympathetic, decisionmaker. A scheme that we assumed would provide capital defendants with more, rather than less, judicial protection, has perversely devolved into a procedure that requires the defendant to stave off a death sentence at each of two *de novo* sentencing hearings.

<u>Id.</u> at 521 (internal citation, quotation marks and alteration omitted). Moreover,

22

because the sentencing decision of the first decisionmaker—i.e, a presumed reasonable jury—can be ignored without any limiting principles in favor of a sentence of death by the second decisionmaker, I question whether it can be deemed constitutional.

HULL, Circuit Judge, specially concurring:

I concur in the majority's opinion. I write separately only to state that Roberts has not challenged the constitutionality of Alabama's statutory, judicial override system in capital sentencing. Therefore, that issue is not before the Court, and there is no reason to discuss it.