[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14005
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-00085-SPC-MRM

JAVIER ENRIQUEZ,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondent-Appellee,

ATTORNEY GENERAL, STATE OF FLORIDA,

Respondent.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 26, 2016)

Before WILSON, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Javier Enriquez, a Florida prisoner proceeding *pro se*, appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition.  In support of his claim for habeas relief, Petitioner argues that the Florida trial court erred by *sua sponte* closing the courtroom to spectators during his trial without following the four-part test announced by the Supreme Court in *Waller v. Georgia*, 467 U.S. 39 (1984).  After careful review, we affirm.

## I.  BACKGROUND

### A.    State Criminal Conviction and Post-Conviction Proceedings

In 2008, the State of Florida charged Petitioner in an amended multiple-count information with five counts of capital sexual battery of a child less than 12 years of age, in violation of Fla. Stat. § 794.011(2), and two counts of lewd and lascivious molestation, in violation of Fla. Stat. § 800.04(5)(b).  After opening statements at trial, the trial court asked the attorneys to approach the bench.  The trial court said:  "This is a rape case, isn't it?"  The defense attorney responded affirmatively.  The follow exchange then took place:

| | |
|---|---|
| THE COURT: | Underage child, why have you got all the witnesses back there? |
| [Defense attorney]: | Those are attorneys, Judge. |
| THE COURT: | I know, but they're not involved in the case. |

2

[Defense attorney]:    They're just watching. They were asked to come down by my office because they're taking over my cases when I'm gone.

THE COURT:    She's taking the cases?

[Prosecutor]:    The first witness we're calling, the courtroom needs to be cleared.

[Defense attorney]:    There's been no motion to clear the courtroom.

THE COURT:    I don't care about the motion, I care about the children. If you can show me the statute that says you can bring everyone from your office, I'll be glad to let them stay.

[Defense attorney]:    Okay. But the burden is actually on the State that they should get a closed courtroom and not the other way around.

THE COURT:    I have certain obligations myself. You show me where I should not close it, take a minute to look at the statute, I'll be glad to not close it. Absent that, it's going to be closed. I've got a burden myself.

[Defense attorney]:    The only statute I'll be able to find is one saying the State needs to make a motion to have it closed.

THE COURT:    We've already got [sic] over that. I'm going to conduct the trial whether you do it or not, I will protect you if you miss when it comes to those children.

Now—so assume I have the authority to do it, now am I required to let in anyone you

3

|  | want to let in, as long as they work for the public defender's office? |
|---|---|
| [Defense attorney]: | It could be the State Attorney's Office, it could be witness management, it could be anybody. |
| THE COURT: | You're not telling me anything, ask them to leave while these two girls testify. |

Because the defense attorney said she would prefer the court ask them to leave, the trial court stated:  "Anyone not directly involved in this case because of the nature of the case and the requirement at this time will have to step outside of the courtroom."

As its first witness, the State called nine-year-old L.O.  L.O. identified Petitioner as her stepfather, and testified that she was watching television on her mother's bed, when Petitioner put his first two fingers in her "private under part." He also put his mouth on her private part.  Afterwards, he gave her a bath.  L.O. further stated that Petitioner would wake her up in the morning, lie down next to her, and touch her "under part" over her pajamas.  After L.O. testified, the State called her sister N.O.  N.O. stated that she was eight years old, and that Petitioner had done something to her that she did not like, but she was not able to answer any of the State's other questions.[1]

---

[1]  The trial court granted Petitioner's motion for judgment of acquittal as to the three counts relating to N.O.

The jury ultimately found Petitioner guilty of two counts of capital sexual battery on a child less than 12 years of age and two counts of lewd and lascivious molestation.  The trial court sentenced Petitioner to life imprisonment for each of the sexual battery charges and 25 years for each of the molestation charges, all to be served concurrently.

Petitioner filed a direct appeal, arguing in relevant part that the trial court erred by *sua sponte* clearing the courtroom of members of the public defender's office and others not directly involved in the case, without making any of the findings required by *Waller v. Georgia*, 467 U.S. 39 (1984).  He further asserted that the trial court's exclusion of the attorneys from the public defender's office violated Fla. Stat. § 918.16, which prohibits a court from excluding attorneys and officers of the court from the courtroom.  The Florida appellate court *per curiam* affirmed Petitioner's convictions and sentences.

In 2010, Petitioner filed a motion for state post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising five issues not relevant to the present appeal.  The trial court denied his motion, and the Florida appellate court *per curiam* affirmed.

## B.    Federal Habeas Petition

Petitioner subsequently filed the present § 2254 petition in February 2014, asserting multiple grounds for relief.  As relevant to this appeal, Petitioner alleged

5

that the trial court violated his constitutional rights by clearing the courtroom prior to the testimony of the minor victims, without making the necessary findings pursuant to the Supreme Court's decision in *Waller*.

The district court denied Petitioner's § 2254 petition.  In particular, the district court concluded that the four requirements of *Waller* justified the closure of the courtroom during the testimony of the minor victims.  Specifically, the district court concluded that:  (1) protecting young victims of sexual abuse was a compelling state interest; (2) the partial courtroom closure was not broader than necessary to meet those interests; (3) the partial closure was a reasonable alternative; and (4) the trial court's comments about the nature of the case and the victims' ages, when read in context, made clear that it supported the partial closure with adequate findings.  But the district court granted Petitioner a certificate of appealability as to this claim, concluding that reasonable jurists could debate whether the trial court failed to address the third and fourth prongs of the *Waller* four-part test.

## II.  DISCUSSION

### A.    Governing Principles

We review a district court's denial of a habeas petition under § 2254 *de novo*.  *Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1245 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1562 (2015).  Although we review the district

6

court's factual findings for clear error, we review its rulings on questions of law and mixed questions of law and fact *de novo. Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth a standard that makes granting habeas relief difficult on a claim that the state court has adjudicated on the merits. *See White v. Woodall*, 572 U.S. __, 134 S. Ct. 1697, 1702 (2014). Under AEDPA, a federal court may only grant habeas relief on a claim if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary" to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by" the Supreme Court or decides a case differently than the Supreme Court when faced with a case involving materially indistinguishable facts. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Moreover, a state court decision constitutes an "unreasonable application" of clearly established federal law, where the court identifies the correct governing principles, but unreasonably applies those principles to a petitioner's case. *Id.* at 1261. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that

7

a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question[.]"  *White*, 134 S. Ct. at 1706–07.

## B.    Sixth Amendment Claim

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const., amend. VI. The right to a public trial applies to state criminal defendants through the Fourteenth Amendment.  *In re Oliver*, 333 U.S. 257, 272–73 (1948).  Because a violation of the right to a public trial constitutes structural error, a petitioner who establishes such a violation is entitled to relief.  *Judd v. Haley*, 250 F.3d 1308, 1314–15 (11th Cir. 2001).

Petitioner argues that the trial court violated his Sixth Amendment right to a public trial because its *sua sponte* closure of the courtroom was inconsistent with the Supreme Court's decision in *Waller*.  In *Waller*, the Supreme Court considered whether the closure to the public of a hearing on a motion to suppress violated a defendant's Sixth and Fourteenth Amendment right to a public trial.  *Waller*, 467 U.S. at 40–41.  The defendants in *Waller* were charged with racketeering and gambling, and prior to trial, they moved to suppress the wiretap evidence.  *Id.* at 41.  The State moved to close the suppression hearing on the ground that the wiretap evidence might violate the privacy rights of people other than the defendants.  *Id.*  The trial court granted the motion, and excluded all individuals

other than the witnesses, court personnel, the parties, and their lawyers, for the entire duration of the seven-day hearing. *Id.* at 42. The Supreme Court held that the closure violated the defendants' right to a public trial. *Id.* at 43. The Court first explained that a trial court must balance the interests weighing in favor of and against closing the courtroom. *See id.* at 45. The Court next articulated a four-part test that must be followed when a court considers closing the courtroom to all spectators:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Id.* at 47.

Petitioner's *Waller* claim is dependent upon whether the closure of the courtroom in the present case was a partial or a complete closure. "[W]e have recognized a distinction between total closures of proceedings, as in *Waller*, and situations where the courtroom is only partially closed to spectators." *Judd*, 250 F.3d at 1315. For instance, we have distinguished between the complete closure in *Waller*, where only the parties, their lawyers, and court personnel were permitted in the courtroom for the entire duration of the hearing, from a partial closure, which was limited to one witness's testimony and the press and family members of the defendant, witness, and decedent were permitted to remain in the courtroom

9

during that testimony.  *See Douglas v. Wainright*, 739 F.2d 531, 532 (11th Cir. 1984).  Stated another way, a partial closure occurs when "the public retains some (though not complete) access to a particular proceeding."  *Judd*, 250 F.3d at 1315. *But see id.* (determining that the total closure of a courtroom for a temporary period of a trial, such as during the testimony of one witness, constitutes a complete closure and is subject to the four-part test announced in *Waller*).

Petitioner has not established that the closure of the courtroom in the present case was a complete closure.  During the discussion regarding the clearing of the courtroom, the Florida trial court and the parties referenced "the statute." Presumably, this reference was to Fla. Stat. § 918.16, which states that:

> [I]n the trial of any case, civil or criminal, if any person under the age of 16 or any person with an intellectual disability as defined in s. 393.063 is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, court reporters, and at the request of the victim, victim or witness advocates designated by the state attorney's office.

Fla. Stat. § 918.16(1).  Thus, the statute pursuant to which the trial court issued its directive permits a wide group of people to be present, including the parties, their lawyers and family members, the press, and court reporters.  *See id.*  Because the public retains some access to the trial, it follows that compliance with the statute creates a partial closure, not a complete closure.  *See Lena v. State*, 901 So. 2d 227, 229 (Fla. Dist. Ct. App. 2005) (stating that § 918.16(1) provides for a partial

10

closure of the court room, which allows "certain persons to remain in the courtroom"); *Clements v. State*, 742 So. 2d 338, 341–42 (Fla. Dist. Ct. App. 1999) (explaining that § 918.16 is narrowly tailored to ensure compliance with a defendant's right to a public trial, as the press is able to remain and the individuals excluded are those who have no direct interest in the case).[2]

Although Petitioner states that the courtroom was cleared of all spectators, notably he does not assert that the press, family members, or any other individual allowed to be present by statute was excluded from the courtroom. In fact, the discussion between the court and counsel suggests that it was only members of the public defender's office not involved in the case who were asked to leave. Specifically, employees of the public defender's office were present as spectators for the sole purpose of "watching" the minor child testify. And immediately after the discussion about these employees, the trial court instructed anyone not directly involved in the case to leave the courtroom. This suggests that the trial court's statement was directed at the public defenders who were not directly involved in the case.

---

[2] In *Globe Newspaper Company v. Superior Court for the County of Norfolk*, 457 U.S. 596 (1982), the Supreme Court determined that a Massachusetts's statute that provided for the mandatory exclusion of members of the press and public during the testimony of a minor victim at a trial involving a sex offense violated the First Amendment. 457 U.S. at 598, 609. The Supreme Court noted that other states had similar statutes, including Florida—which provides for the mandatory exclusion of the public, not the press—but noted that it was not passing on the constitutionality of those statutes. *Id.* at 608 n.22.

11

Moreover, when given the chance to persuade the court to allow these spectators to remain, Petitioner did not assert that the trial court was improperly excluding family members or the press.  Instead, when the trial court asked Petitioner's attorney if it was supposed to let anyone into the courtroom just because they happened to work for the public defender's office, Petitioner's attorney stated, "It could be the State Attorney's Office, it could be witness management, it could be anybody."  Notably, § 918.16(1) permits certain members of the public (family members and the press) to remain in the courtroom during the testimony of a minor victim.  *See* Fla. Stat. § 918.16(1).  Because Petitioner only challenged the trial court's exclusion of the members of the public defender's office, we are left to conclude that the trial court did not bar from the courtroom those people the statute allowed to be present, and that it therefore complied with § 918.16.  *See Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation.").  Therefore, we conclude that only a partial closure of the courtroom occurred in the present case.

Having now determined that the closure was only a partial one, we next turn to whether the state court's decision[3] rejecting Petitioner's claim was contrary to,

---

[3]  We interpret the Florida appellate court's *per curiam* affirmance without an opinion as a denial on the merits.  *See Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348, 1353 (11th Cir. 2012) (indicating that a *per curiam* affirmance without an opinion is an adjudication on the merits).

12

or an unreasonable application of, clearly established federal law.  We conclude

that it was not.  Petitioner asserts that the courtroom closure was inconsistent with

*Waller* because the State did not identify an overriding interest for the closure, the

trial court did not consider reasonable alternatives, and the trial court did not make

adequate findings to support the closure.  However, *Waller* involved the complete

closure of a courtroom, not a partial closure.  *Waller*, 467 U.S. at 42.  Thus, *Waller*

is not on point with the facts of this case, and therefore it would not have been

obvious to the state court habeas count—and likewise not clearly established under

§ 2254(d)(1)—that the trial court was required to conduct the four-part *Waller* test

before partially closing the courtroom for the testimony of the two minor victims.

*See Dombrowski v. Mingo*, 543 F.3d 1270, 1276 (11th Cir. 2008) ("'[W]here no

Supreme Court precedent is on point, we cannot say that the state court's

conclusion . . . is contrary to clearly established Federal law as determined by the

U.S. Supreme Court.'" (second alteration in original)).[4]

　　Finally, with respect to partial closures, we have stated that a trial court is

not bound by *Waller* and that the court need only find a substantial reason

justifying the partial closure of the courtroom.  *See Judd*, 250 F.3d at 1315;

---

[4]  Other Circuit Courts of Appeal have similarly concluded that *Waller* did not clearly establish, for purposes of habeas review, the requirements a trial court must follow when partially closing a courtroom.  *See e.g.*, *Drummond v. Houk*, 797 F.3d 400, 403–04 (6th Cir. 2015) (determining that a habeas petitioner was not entitled to relief because it was not clearly established federal law whether, and how, the *Waller* four-part test applies to partial closures); *Garcia v. Bertsch*, 470 F.3d 748, 754 (8th Cir. 2006).

*Douglas*, 739 F.2d at 532–33.  However, to the extent that Petitioner is arguing that the trial court had no substantial reason to partially close the courtroom, case law from our Court does not constitute clearly established federal law for purposes of federal habeas relief.  *See Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1316 (11th Cir. 2010) ("Nor can anything in a federal court of appeals decision, even a holding directly on point, clearly establish federal law for § 2254(d)(1) purposes.").  As such, the Florida appellate court's rejection of Petitioner's claim is not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

## III.  CONCLUSION

For the above reasons, the district court's denial of Petitioner's habeas corpus petition is **AFFIRMED**.