[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13331
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-22522-KMW

WILLIE WIGGINS,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 12, 2019)

Before WILLIAM PRYOR, ANDERSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Willie Wiggins, a Florida prisoner proceeding *pro se*, appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  On appeal, Petitioner argues that his trial counsel rendered ineffective assistance by providing inadequate advice regarding the State's pre-trial plea offer.  He also argues that the trial court erred by not declaring a mistrial based on a comment made by the prosecutor during closing arguments that he alleges violated his due process rights.  After careful review, we affirm.

## I.    BACKGROUND

### A.    State Conviction and Post-Conviction Proceedings

In February 2009, Petitioner was charged in an information with (1) armed robbery with a firearm, in violation of Florida Statutes §§ 812.13(2)(A), 775.087, and (2) possession of a firearm by a convicted felon, in violation of Florida Statutes §§ 790.23(1), 775.087.

At a pre-trial hearing, the trial court explained that, in addition to the present charges of robbery with a firearm and possession of a firearm by a convicted felon, Petitioner had five other pending criminal cases whose charges included attempted armed robbery, possession of a firearm by a convicted felon, robbery with a firearm, and aggravated assault with a firearm.  As to the present armed robbery charge, the trial court explained that Petitioner faced a possible sentence of up to life imprisonment as a habitual violent felony offender and a mandatory life

2

sentence as a prison releasee reoffender. As to the present felon-in-possession charge, the trial court explained that Petitioner faced up to 30 years' imprisonment as a habitual felony offender and a 15-year mandatory minimum sentence as a prison releasee reoffender. The State, however, had offered Petitioner a global plea deal to close all of his pending cases, in exchange for a 15-year sentence as a habitual violent felony offender, with 10 years' imprisonment followed by 5 years' probation. The trial court repeated this offer to Petitioner, explained his trial rights, and then gave Petitioner time to discuss the State's plea offer with his attorney.

Following a recess, Petitioner's trial counsel informed the court that Petitioner did not want to accept the State's plea offer. The prosecutor then summarized the evidence against Petitioner as follows. Petitioner entered a Goodwill Store, pulled out a firearm, and asked the cashier for money. The cashier later identified Petitioner by the tattoos on his neck. Police recovered 15 latent fingerprints from the Goodwill Store and of the 2 that were usable, neither matched Petitioner's fingerprints.

Petitioner's trial counsel explained that the cashier's description of Petitioner was vague and that only one of the two eyewitnesses identified Petitioner in the photo line-up. Trial counsel also informed the court that he had a recorded phone call between a private investigator and the two eyewitnesses, in which one witness

3

stated that she had guessed on the photo line-up and the other said that she did not see the robber's face.  Trial counsel also intended to call Petitioner's girlfriend and niece to testify that he had obtained the neck tattoos—which were relied on by one eyewitness to identify him—after the incident in question.

The trial court thereafter confirmed with Petitioner that he was rejecting the State's offer, which would have closed out all of the cases against him.  Petitioner confirmed that he had spoken to his attorney about the plea offer and that he was rejecting it.  The prosecutor declined Petitioner's counteroffer to a deal involving seven years' imprisonment.  Petitioner acknowledged that he understood the State would not make any other plea offers.

Prior to trial, Petitioner moved to suppress the statement of the store cashier, Barbara Velasquez, who had identified Petitioner as the robber.  He also moved to suppress the testimony of the detective who conducted the photo line-up.  The trial court denied the motion.  Trial counsel then indicated that Petitioner was willing to accept a plea and asked the prosecutor whether the original plea offer was available.  The prosecutor increased the offer to 20 years' imprisonment followed by 5 years of probation.  Petitioner rejected the offer.

At trial, the cashier testified that she was shown a photo line-up approximately two months after the robbery.  She did not see the robber in this line-up.  When officers showed her a second line-up, she identified Petitioner, but

told the officers that she needed to see a picture of his neck because she had observed that the robber had neck tattoos—a "C" and an "E" on the right side and a cursive "M" on the left side. After being shown a picture of Petitioner's neck, the cashier identified the tattoos as those she had seen on the robber's neck. She stated that she did not observe any tattoos on Petitioner's hands. Before the close of the State's case-in-chief, Petitioner displayed his neck tattoos for the jury.

During closing arguments, the prosecutor summarized the evidence and focused on the cashier's identification of Petitioner based on his neck tattoos. When it was defense counsel's turn, he stated that the cashier had testified that the robber did not have tattoos on his hands, but that it was clear when Petitioner displayed his neck tattoos for the jury that he had tattoos all over his hands. In rebuttal, the prosecutor explained that the jury had seen the tattoos on Petitioner's hands, but that three years had passed since the robbery and it was unclear when he had gotten the hand tattoos.

After the jury retired for deliberations, Petitioner's trial counsel moved for a mistrial based on the prosecutor's suggestion on rebuttal that Petitioner could have gotten the hand tattoos in the three years since the robbery. Trial counsel argued that this statement was improper given that the prosecutor knew that Petitioner had been in custody for the past three years. The trial court denied the motion, noting that many people get tattoos in prison and that Petitioner was not prejudiced by the

5

prosecutor's comment.  The jury found Petitioner guilty of robbery with a firearm and the trial court sentenced him to life imprisonment.

On appeal, Petitioner argued in relevant part that the trial court erred in denying his motion for a mistrial on the ground that the prosecutor improperly argued that Petitioner's hand tattoos were obtained after the robbery.  Specifically, Petitioner argued that the prosecutor's comment was not based on the trial evidence and that it encouraged the jury to engage in speculation.  The Florida appellate court summarily affirmed Petitioner's conviction and sentence in a per curiam opinion.

Petitioner later filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  He argued that his trial counsel was ineffective for advising him that the State's evidence was weak and that he should reject the plea offer.  The state post-conviction court denied Petitioner's 3.850 motion, concluding in relevant part that Petitioner was "fully engaged in the plea negotiations, and knowingly accepted the risks associated with multiple trials." The court further determined that trial counsel's view of the strengths and weaknesses of the case was reasoned and did not prejudice Petitioner.  The Florida appellate court affirmed in a per curiam decision without a written opinion.

6

**B.    Federal Habeas Petition**

In June 2015, Petitioner filed the present § 2254 petition, raising several claims.  As relevant here, Petitioner argued that the trial court erred in denying his motion for a mistrial because the State had violated his due process rights by implying that his hand tattoos were obtained after the robbery.  He also asserted that his trial counsel rendered ineffective assistance by misadvising him about the State's plea offer.  Specifically, he argued that his trial counsel incorrectly advised him to reject the State's offer.  He also argued that trial counsel inaccurately described the offer as a 15-year mandatory minimum rather than a 10-year sentence with 5 years of probation.  He contended that he would have taken the plea offer if he had been advised correctly.

The magistrate judge issued a Report and Recommendation ("R&R"), recommending the denial of Petitioner's § 2254 petition.  First, the magistrate judge concluded that the state trial court did not abuse its discretion by denying Petitioner's motion for a mistrial because the prosecutor's comments regarding Petitioner's hand tattoos were a fair response to trial counsel's argument that the victim's identification was questionable because she had not observed any hand tattoos.  As to Petitioner's ineffective-assistance claim, the magistrate judge determined that Petitioner was well aware that he faced a sentence of life imprisonment if he went to trial.  The magistrate judge concluded that Petitioner's

7

conviction did not render trial counsel's advice concerning the strength of the State's case unreasonable. Accordingly, the magistrate judge recommended that the district court deny the § 2254 petition.

Over Petitioner's objections, the district court adopted the R&R and denied the petition. However, the district court determined that reasonable jurists could debate the merits of whether Petitioner's due process rights were violated by the prosecutor's comments during closing arguments and whether trial counsel rendered ineffective assistance when advising him about the State's plea offer. Accordingly, the district court granted a certificate of appealability as to those two issues.

## II.    DISCUSSION

### A.    General Principles

We review a district court's denial of a § 2254 habeas petition *de novo*. *Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1245 (11th Cir. 2014). Although we review the district court's factual findings for clear error, we review *de novo* its rulings on questions of law and mixed questions of law and fact. *Id.* An ineffective assistance claim "presents a mixed question of law and fact that we review *de novo*." *Pope v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 1254, 1261 (11th Cir. 2014).

8

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth a standard that makes granting habeas relief difficult on a claim that the state court has adjudicated on the merits. *See White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Under AEDPA, a federal court may only grant habeas relief on a claim if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002) (quotation marks omitted). A state court decision constitutes an "unreasonable application" of clearly established federal law, where the court identifies the correct governing principles, but unreasonably applies those principles to a petitioner's case. *Id.* at 1261. "This Court has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it." *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1350 (11th Cir. 2019).

9

When conducting federal habeas review, a federal court must identify the last state court decision that adjudicated the claim on the merits.  *Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016).  To constitute an adjudication on the merits, a state court need not provide an explanation for its decision.  *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254–55 (11th Cir. 2002) (concluding that a state court's summary denial of a claim is considered an adjudication on the merits for purposes of § 2254(d)(1)).

In *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), the Supreme Court held that, when a state court's adjudication on the merits has no reasoned opinion, a "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning."  *Id.* at 1192.  That presumption does not hold, however, "[w]here there are convincing grounds to believe the silent court had a different basis for its decision than the analysis followed by the previous court . . . ."  *Id.* at 1197.  Moreover, because *Wilson* concerned which state-court decision a federal court should review, not "the specificity or thoroughness with which state courts must spell out their reasoning to be entitled to AEDPA deference or the level of scrutiny that we are to apply to the reasons that they give," we have held that "[o]ur no-grading-papers, anti-flyspecking rule remains the law of the circuit."  *Meders*, 911 F.3d at 1350.

### B.    Ineffective-Assistance-of-Counsel Claim

Petitioner argues that his trial counsel was ineffective for providing inadequate advice regarding the State's plea offer before trial.

To establish ineffective assistance of counsel, a § 2254 petitioner must show that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) the petitioner suffered prejudice as a result of the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Counsel's performance was deficient only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To establish prejudice in the context of a rejected guilty plea, the petitioner must establish a reasonable probability that:  (1) he would have accepted the plea but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence. *Missouri v. Frye*, 566 U.S. 134, 147 (2012). "Because a petitioner's failure to establish either deficient performance or prejudice is fatal to a *Strickland* claim, we need not address both *Strickland* prongs if the petitioner fails to satisfy either one of them." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012).

"The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (quotation marks omitted). The Supreme Court has stated that "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted).

Here, the Florida appellate court summarily affirmed the Florida post-conviction court's denial of Petitioner's ineffective-assistance claim, so we must "look through" the appellate court's unexplained decision and evaluate the post-conviction court's rationale for denying Petitioner's claim. *See Wilson*, 138 S. Ct. at 1192. The state post-conviction court concluded that counsel was not ineffective for allegedly advising Petitioner to reject the State's plea offer. Specifically, the court determined that counsel's view of the strengths and weaknesses of the case was reasoned and, in light of Petitioner's exposure, did not prejudice Petitioner.

The state post-conviction court's denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law. Rather, the state court correctly determined that counsel provided reasoned advice, given that, from counsel's perspective at the time of the plea offer, the State's case

12

suffered from several weaknesses. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). In addition to the fact that no fingerprints linked Petitioner to the crime, counsel believed that he could secure witnesses who would testify that Petitioner's neck tattoos—which one eyewitness used to identify Petitioner as the robbery suspect—were obtained after the incident in question. Moreover, one of the two eyewitnesses had told a private investigator that she could not identify the suspect and the other eyewitness said she had guessed during the photo line-up. The fact that Petitioner ultimately lost at trial does not render counsel's assessment of the relative strengths of Petitioner's case unreasonable. *See id.* at 689 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ."); *see also Premo v. Moore*, 562 U.S. 115, 132 (2011) ("[H]indsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predications of how the trial would proceed.").

Because Petitioner cannot prevail under *Strickland*'s deficient-performance prong, we need not address the state court's analysis of the prejudice prong. *Pope*, 680 F.3d at 1284. On this record, the state post-conviction court's rejection of

Petitioner's ineffective-assistance-of-counsel claim was not contrary to, or an unreasonable application of, *Strickland*.

## C.     Motion for a Mistrial

Petitioner also argues that the district court erred when it rejected his claim that the prosecutor's comment regarding his hand tattoos during closing arguments violated his due process rights and that the trial court's refusal to grant a mistrial based on those statements failed to remedy that violation.  As noted, Petitioner challenged the trial court's denial of his motion for a mistrial based on the prosecutor's comment on direct appeal, but the Florida appellate court summarily affirmed the conviction.

Thus, the Florida trial court and the Florida appellate court adjudicated this claim on the merits.  That being so, under AEDPA, a federal court may only grant habeas relief on this claim if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The clearly established federal law for assessing whether a prosecutor's improper comments violated a petitioner's due process rights was articulated in *Darden v. Wainright*, 477 U.S. 168 (1986).  *Parker v. Matthews,* 567 U.S. 37, 45–49 (2012).   In *Darden*, the prosecutor had made remarks during closing argument that were later

14

condemned by all reviewing courts. *Darden*, 477 U.S. at 179. Nevertheless, the Supreme Court held that, regardless of the impropriety of the remarks, as a constitutional matter, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (quotation marks omitted). The Court further clarified that "the appropriate standard of review for such a claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quotation marks omitted). The Court likewise noted that, when determining whether a statement has infected the trial as a whole, a reviewing court may consider the extent to which a prosecutor's remarks were invited by opposing counsel. *Id.* at 181–82. Applying this standard to the case before it, the Supreme Court concluded that Darden's trial was not fundamentally unfair. *Id.* at 183.

In his closing argument in the present case, Petitioner's counsel argued, in essence, that the jury should conclude that Petitioner was not the robber because the eyewitness said that the robber had no tattoos on his hands, but, when Petitioner displayed his neck tattoos for the jury, the jury had seen that Petitioner had tattoos on his hands. Counsel's exact words were: "Mrs. Velasquez went on to say that the person who did the robbery had no tattoos on his hands. Now, let me remind you[,] when Mr. Wiggins came up and showed you the tattoos [on his

15

neck], you saw he has tattoos all over both hands, okay." The prosecutor responded in his rebuttal argument: "Tattoos on hands. You saw them. Do we know when he got those tattoos? It has been three years since the robbery."

After the conclusion of closing arguments, Petitioner moved for a mistrial based on prosecutorial misconduct, arguing that the prosecutor's suggestion that Petitioner could have gotten his hands tattooed at some point during the three-year period since the robbery was a knowingly false argument because the prosecutor was aware that Petitioner had been incarcerated throughout this three-year period. Responding that "many people get tattoos in jail or in prison" and finding that Petitioner was not prejudiced, the trial court denied the motion for a mistrial. Petitioner challenged the trial court's denial of this motion on direct appeal and the Florida appellate court affirmed the judgment without written explanation.

Here, the state trial court's explanation for denying the motion for mistrial was admittedly terse, but in context one can glean its gist. The state trial court, in shorthand fashion, concluded that the prosecutor did not knowingly make a false statement, and thereby mislead the jury, because it was entirely possible that Petitioner got his tattoos after the robbery, while he was imprisoned. This finding is entitled to deference, as is the court's decision that a mistrial was not warranted on this basis, and the court's conclusion was not contrary to, or an unreasonable application of, clearly established federal law. *See Meders*, 911 F.3d at 1351 ("It

16

would be irrational to afford deference to a decision with no stated explanation but not afford deference to one that states reasons, albeit not as thoroughly as it could have.").

In addition to the fact that the prosecutor's isolated remark did not misstate any evidence, we also note that the comment was made in direct response to defense counsel's closing argument. *See Darden*, 477 U.S. at 181–82. Indeed, by questioning Velasquez's identification based on Petitioner's hand tattoos, defense counsel invited the prosecutor's response that the record did not contain any evidence regarding when Petitioner had obtained the tattoos. *See Whisenhant v. Allen*, 556 F.3d 1198, 1207 (11th Cir. 2009) (concluding that the prosecutor's remark about the lack of evidence regarding defendant's insanity was an invited response to the defense's closing argument and did not render the trial fundamentally unfair). Under the circumstances, the prosecutor's limited and fair response to defense counsel's remark did not render the entire trial fundamentally unfair.

In short, the state trial court's determination that the prosecutorial comment was not improper, and thus did not warrant a mistrial, meaning that Petitioner's due process rights were not violated, was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the district court properly denied habeas relief on this claim.

## III.    <u>CONCLUSION</u>

The district court's denial of Petitioner's § 2254 petition is **AFFIRMED**.