[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13515
_____

D. C. Docket No. 6:07-cv-00839-MSS-KRS

MACKLE VINCENT SHELTON,

Petitioner-Appellee,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 24, 2012)

Before WILSON, ANDERSON and HIGGINBOTHAM,* Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

A Florida state prisoner petitioned for federal habeas relief, challenging the

_____

*Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit,
sitting by designation.

constitutionality of a Florida statute that altered the mens rea requirement for state drug offenses.[1]  The district court, finding a due process violation, granted relief. We conclude that the state court did not unreasonably apply clearly established federal law, as determined by the U.S. Supreme Court, and reverse.

## I.

### A. Legal Background

Florida's Comprehensive Drug Abuse Prevention and Control Act ("Act") provides that, except as otherwise authorized, "it is unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance" or "to be in actual or constructive possession of a controlled substance."[2]  Violations range from misdemeanor offenses to first-degree felonies.[3]

The statute does not specify a necessary mental state, an issue the Florida Supreme Court first addressed in *Chicone v. State*.[4]  Reviewing a conviction for cocaine possession, the court held that the State was required to prove that the

---

[1]FLA. STAT. § 893.101.

[2]*Id.* § 893.13(1)(a), (6)(a).

[3]*Id.* § 893.13(1)-(2).

[4]684 So. 2d 736 (Fla. 1996).

defendant "knew of the illicit nature of the items in his possession."[5]  The court reaffirmed that holding six years later, making clear that the requisite mens rea includes both knowledge of the presence of the controlled substance as well as knowledge of its illicit nature.[6]

The Florida Legislature responded swiftly to the latter decision.  On May 13, 2002, it enacted a statute, now codified at FLA. STAT. § 893.101, amending the Drug Abuse Prevention and Control Act.  The amendment provides in full:

> (1) The Legislature finds that the cases of *Scott v. State* and *Chicone v. State*, holding that the state must prove that the defendant knew of the illicit nature of a controlled substance found in his or her actual or constructive possession, were contrary to legislative intent.
>
> (2) The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter.
>
> (3) In those instances in which a defendant asserts the affirmative defense described in this section, the possession of a controlled substance, whether actual or constructive, shall give rise to a permissive presumption that the possessor knew of the illicit nature of the substance. It is the intent of the Legislature that, in those cases where such an affirmative defense is raised, the jury shall be instructed on the permissive presumption provided in this subsection.[7]

---

[5]*Id.* at 744.

[6]*Scott v. State*, 808 So. 2d 166, 169 (Fla. 2002).

[7]FLA. STAT. § 893.101 (citations omitted).

3

The Florida Supreme Court recently considered a facial challenge to the Act as amended, brought under the Due Process Clauses of the Florida and United States Constitutions,[8] of which the district court in this case did not have the benefit. The Florida Supreme Court upheld the statute as constitutional and in the process provided its definitive interpretation,[9] tracking the text of the statute:

> The statute . . . expressly eliminates knowledge of the illicit nature of the controlled substance as an element of controlled substance offenses and expressly creates an affirmative defense of lack of knowledge of the illicit nature of the substance. The statute does not eliminate the element of knowledge of the presence of the substance . . . .[10]

In short, the amendment did not completely eliminate mens rea for Florida drug crimes: it converted one aspect of mens rea from an element of the crime into an affirmative defense.

### B. Procedural Background

A Florida jury convicted petitioner Mackle Vincent Shelton of five counts,

---

[8] *State v. Adkins*, No. SC11-1878, — So. 3d —, 2012 WL 2848903 (Fla. July 12, 2012).

[9] *See Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute.").

[10] *Adkins*, 2012 WL 2848903, at — (plurality opinion); *see also id.* at — (Pariente, J., concurring) ("The Act is facially constitutional only because it . . . continues to require the State to prove that a defendant had knowledge of the *presence* of the controlled substance as an element of drug-related offenses . . . ."); *id.* at — ("Significantly, the State still bears the burden of proving a defendant's knowledge of presence in order to establish a defendant's actual or constructive possession of the controlled substance.").

4

one of which was for delivery of crack cocaine. Shelton's trial, which took place

in 2005, postdated the amendment to Florida's Drug Abuse Prevention and

Control Act. Accordingly, the jury was not instructed that Shelton's knowledge of

cocaine's illicit nature was an element of the offense.[11] Rather, the jury was

instructed as follows:

> To prove the crime of delivery of cocaine, the State must prove the
> following two elements beyond a reasonable doubt:
> [1] That Mackle Vincent Shelton delivered a certain substance; and,
> [2] That the substance was cocaine.[12]

The jury convicted, and Shelton was sentenced to eighteen years in prison.

Shelton appealed his conviction and sentence. Florida's Fifth District Court

of Appeal affirmed without elaboration.[13] Shelton then pursued state post-

conviction relief, which the trial court denied. Again, the court of appeal affirmed

without comment.[14] At each stage, Shelton made a due process argument akin to

---

[11]Shelton did not assert lack of knowledge of cocaine's illicit nature as an affirmative defense, as Section 893.101 permits. Because this does not affect our jurisdiction, *see Bond v. United States*, 131 S. Ct. 2355, 2367-68 (2011) (Ginsburg, J., concurring), and because we find no procedural default, we will assume without deciding that Shelton is entitled to bring a facial challenge despite failing to avail himself of the statute's full protection.

[12]"Deliver" or "delivery," in both the statute and the jury instruction, is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." *See* FLA. STAT. § 893.02(6).

[13]*Shelton v. State*, 932 So. 2d 212 (Fla. Dist. Ct. App. 2006) (table decision).

[14]*Shelton v. State*, 951 So. 2d 856 (Fla. Dist. Ct. App. 2007) (table decision).

the one presented here.  Shelton then turned to federal habeas corpus relief, filing the petition giving rise to this case on May 18, 2007.

Shelton sought federal habeas relief on nine grounds.  The district court rejected eight,[15] but was persuaded on one ground: that the Act as amended is facially unconstitutional under the Due Process Clause.  The court first concluded that "no deference is due to the state court's decision,"[16] leading it to review Shelton's constitutional argument de novo.[17]  It then held that the Act as amended is facially unconstitutional because (1) its penalties are too harsh, (2) violations lead to substantial social stigma, and (3) it reaches inherently innocent conduct.[18]  The court granted habeas relief on that basis, staying relief pending appeal.[19]  The State timely appealed.[20]

## II.

_____

[15]*Shelton v. Sec'y, Dep't of Corrections*, 802 F. Supp. 2d 1289, 1308-15 (M.D. Fla. 2011). The district court denied Shelton a certificate of appealability on those eight claims, *id.* at 1315, and Shelton has not attempted to argue them before us.  We therefore do not consider them.

[16]*Id.* at 1297.

[17]*Id.*

[18]*Id.* at 1297-1306.

[19]*Id.* at 1315.

[20]A certificate of appealability is not required because a representative of Florida is appealing the district court's grant of habeas relief.  *See* FED. R. APP. P. 22(b)(3); *Lawhorn v. Allen*, 519 F.3d 1272, 1276 n.1 (11th Cir. 2008).

## A.  AEDPA Deference Generally

As in so many federal habeas cases reviewing state convictions, setting the proper scope and standard of federal court review is critical.[21]  A federal court may not grant a petitioner habeas relief on a claim that was adjudicated on the merits by the state court unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[22]  The state court's factual findings are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence.[23]  Because Shelton brings a facial challenge, the state court's factual findings are not in dispute and Section 2254(d)(2) is not implicated.

The Supreme Court has explained the requirements of Section 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached

---

[21]Because Shelton filed his federal habeas petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs our review. *See Land v. Allen*, 573 F.3d 1211, 1215 (11th Cir. 2009).

[22]28 U.S.C. § 2254(d).

[23]*Id.* § 2254(e)(1).

7

by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[24]

That is, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law,"[25] the former "a substantially higher threshold."[26]  To obtain relief under § 2254(d), the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[27]

## B.  Deference in Shelton's Case

When reviewing the district court's grant or denial of habeas relief, we review its conclusions on legal questions and mixed questions of law and fact de novo.[28]  In this case, that review begins with the district court's determination of *its* standard of review.  Drawing on the Supreme Court's recent decision in

---

[24]*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

[25]*Id.* at 410.

[26]*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[27]*Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

[28]*Roberts v. Comm'r, Ala. Dep't of Corrections*, 677 F.3d 1086, 1089 (11th Cir. 2012).

*Harrington v. Richter*,[29] the district court concluded that the Florida appellate court rulings in Shelton's case were not "adjudications on the merits" entitled to deference because they were one-word summary affirmances.

In *Harrington*, the Supreme Court held that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[30]  Under *Harrington*'s general rule, then, a state court's simple one-word affirmance is presumed to be an adjudication on the merits of the petitioner's claim.[31]  But the district court located what it considered to be a "state-law procedural principle to the contrary" in a 1983 Florida Supreme Court case.[32]  In that case, according to the district court, the Florida Supreme Court supplied a state-law procedural principle "that a *per curiam* affirmance has no precedential value and is not an adjudication on the merits."[33]

---

[29] 131 S. Ct. 770.

[30] *Id.* at 784-85.

[31] "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely," *id.* at 785, a showing that Shelton has not attempted to make here.

[32] *Dep't of Legal Affairs v. Dist. Court of Appeal, 5th Dist.*, 434 So. 2d 310 (Fla. 1983).

[33] *Shelton*, 802 F. Supp. 2d at 1297 (citing *Dep't of Legal Affairs*, 434 So. 2d at 311).

The district court is only half-right, and not on the half that counts for federal habeas purposes.  The Florida Supreme Court never held that a "per curiam appellate court decision with no written opinion" is not an adjudication on the merits; all it did was hold that the decision holds no precedential value for future cases.[34]  Indeed, a Florida district court of appeal recently "reiterate[d] that a per curiam affirmance without opinion is not an indication that the case was not considered on the merits."[35]  That position is consonant with this Circuit's recent en banc decision in another Florida habeas case, which held that "an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar" and that deference is presumed "unless the state court clearly states that its decision was based solely on a state procedural rule."[36]  Here, the state court on direct appeal did not apply a procedural bar, and we are therefore compelled to presume that the court rendered an "adjudication on the merits" entitled to AEDPA deference.[37]

----

[34]*Dep't of Legal Affairs*, 434 So. 2d at 311.

[35]*Crittenden v. State*, 67 So. 3d 1184, 1185 n.1 (Fla. Dist. Ct. App. 2011).

[36]*Childers v. Floyd*, 642 F.3d 953, 968, 969 (11th Cir. 2011) (en banc); *see also Wright v. Sec'y for the Dep't of Corrections*, 278 F.3d 1245, 1254 (11th Cir. 2002) (agreeing with six circuits, in another Florida habeas case, that "the summary nature of a state court's decision does not lessen the deference that is due").

[37]*See supra* note 31 (explaining that Shelton has not attempted to rebut this presumption).

That conclusion significantly circumscribes the scope of our review. Unless we find that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,"[38] we must deny relief.

## III.

In order for Shelton to prevail here, he must be able to point to Supreme Court precedent clearly establishing that the Due Process Clause forbids the partial elimination of mens rea as an element of crimes analogous to those in Florida's Drug Abuse Prevention and Control Act, beyond any possibility for fairminded disagreement. That is a tall order, and as it happens, an impossible one.

It bears noting at the outset that, while the Florida Supreme Court's decision upholding the Act under the Due Process Clause[39] does not bind us, it illustrates that five Justices of the Florida Supreme Court agree that no U.S. Supreme Court precedent renders the Act as amended unconstitutional. Were we to grant relief for Shelton here, we would necessarily imply that those Justices *unreasonably* applied clearly established federal law, as determined by the U.S. Supreme Court. If nothing else, that improbable outcome illustrates the uphill battle Shelton faces.

---

[38] 28 U.S.C. § 2254(d)(1).

[39] *State v. Adkins*, No. SC11-1878, — So. 3d —, 2012 WL 2848903 (Fla. July 12, 2012).

11

As it turns out, a fine-grained parsing of Supreme Court precedents is unnecessary to resolve our constricted inquiry.  One very general principle can be distilled from the Court's cases in this area: legislatures have "wide latitude . . . to declare an offense and to exclude elements of knowledge and diligence from its definition,"[40] but they still must "act within any applicable constitutional constraints"[41] when defining the elements of a criminal offenses.  The Court has not drawn lines around this principle sufficient to dictate a particular result of the Florida court here, especially considering that Florida's elimination of mens rea was only partial.  The Supreme Court has acknowledged that its work in this area has only just begun, noting twice that no court "'has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not.'"[42] Absent a Supreme Court case directly on point or a case so closely analogous that fairminded jurists would agree that its rule must extend to the present scenario, the Court's acknowledgment of uncertainty in this key principle effectively answers the

---

[40]*Lambert v. California*, 355 U.S. 225, 228 (1957).

[41]*Liparota v. United States*, 471 U.S. 419, 424 n.6 (1985); *see also Patterson v. New York*, 432 U.S. 197, 210 (1977) ("[T]here are obviously constitutional limitations beyond which the States may not go in this regard.").

[42]*Staples v. United States*, 511 U.S. 600, 620 (1994) (quoting *Morissette v. United States*, 342 U.S. 246, 260 (1952)).

12

AEDPA inquiry in Florida's favor.

Today, we need not march through all Supreme Court cases to prove the negative that the Supreme Court has never addressed Shelton's issue head-on, much less addressed it in his favor. It suffices to note that only once, in *Lambert v. California*, has the Supreme Court held a criminal provision unconstitutional under the Due Process Clause for failing to require sufficient mens rea. *Lambert* was an as-applied challenge to a Los Angeles municipal ordinance requiring felons to register with the city.[43] The Court held that because failing to register is "wholly passive," the defendant lacked any notice whatsoever of her wrongdoing, violating her due process rights.[44] The actions criminalized by the Florida Act as amended are sufficiently distinguishable—requiring affirmative acts of selling, manufacturing, delivering, or possessing, in addition to knowledge of the presence of the substance, all with an affirmative defense of lack of knowledge available—that we cannot say the state courts were unreasonable not to import *Lambert*'s reasoning into this very different context.

Other cases that Shelton and the district court relied on are not square due process holdings. Rather, those cases avoid the due process question, sometimes

---

[43]*Lambert*, 355 U.S. 225.

[44]*Id.* at 228.

13

invoking the rule of lenity, by reading a mens rea requirement into otherwise silent or ambiguous statutes.[45] As Florida's statute is explicit in its partial elimination of mens rea, those rulings are no aid in Shelton's struggle to overcome AEDPA deference. Constitutional avoidance is little help to someone in search of clearly established constitutional law.

It must be said, too, that at a similar level of generality, a number of the Court's cases cut Florida's way,[46] many of which the Florida Supreme Court relied on in upholding the amendment.[47] It is plain that the analysis of the district court, addressing the due process question de novo, conflicts with the analysis of the Florida Supreme Court, but the district court implicitly concedes that its own result was not *commanded* by Supreme Court precedent in the manner

---

[45] *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *Staples*, 511 U.S. 600; *Liparota*, 471 U.S. 419; *United States v. U.S. Gypsum Co.*, 438 U.S. 422 (1978); *Morissette*, 342 U.S. 246. *See generally Shelton*, 802 F. Supp. 2d at 1298 ("[T]he issue typically arises where a statute is silent as to knowledge . . . .").

[46] *See Patterson*, 432 U.S. 197 (upholding against a due process challenge New York's statute making extreme emotional distress an affirmative defense to a murder charge); *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558 (1971); *United States v. Freed*, 401 U.S. 601, 607-10 (1971); *United States v. Balint*, 258 U.S. 250 (1922) (upholding against a due process challenge the Narcotic Act of 1914, which lacked a knowledge requirement (deliberately, as the Court found), and declining to read one into the statute); *see also Staples*, 511 U.S. at 616 n.11 ("Of course, if Congress thinks it necessary to reduce the Government's burden at trial to ensure proper enforcement of the [National Firearms] Act, it remains free to amend [it] by explicitly eliminating a *mens rea* requirement.").

[47] *Adkins*, 2012 WL 2848903.

14

contemplated by AEDPA.  Its error here was made at the beginning—failing to accord deference to the state court decision on the erroneous view that it was not an adjudication on the merits of Shelton's appeal.  To be clear, this Court expresses no view on the underlying constitutional question, as we limit our analysis to AEDPA's narrow inquiry.  That inquiry leads us to conclude that nothing in the *U.S. Reports* decides or implies resolution of the novel issue of the Florida Act's constitutionality, and we cannot find Florida's adjudication to be unreasonable under AEDPA.

## IV.

The district court's grant of habeas relief is REVERSED.[48]

---

[48]Shelton's motions to strike are denied.  The previous contrary order on the motion to strike a paragraph of the reply brief, entered by a single judge of this court as an administrative ruling, is vacated.