IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33575-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES D. COLE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Charles Cole appeals his conviction of one count of possession

of methamphetamine and two counts of bail jumping. He challenges the sufficiency of

the evidence to support one of the bail jumping counts, an evidentiary ruling, the court's

limitation of his closing argument, alleged prosecutorial misconduct in the State's closing

argument, the constitutionality of two statutes under which he was charged, and the legal

financial obligations imposed.

We find the court's exclusion of evidence of Mr. Cole's pattern of appearing in court to be reversible error as to the second bail jumping count, reverse that conviction, and remand for a new trial on that count. We find no other error or abuse of discretion and affirm his convictions of unlawful possession of a controlled substance and the first bail jumping count.

FACTS AND PROCEDURAL BACKGROUND

In June 2014, a Wenatchee police officer arrested Charles Cole on an active misdemeanor warrant. During a search incident to arrest, he found a cigarette package containing a glass smoking pipe in the pocket of a pair of shorts Mr. Cole was carrying. Residue in the pipe proved to be methamphetamine. The State charged Mr. Cole with one count of unlawful possession of a controlled substance—methamphetamine.

At the time of Mr. Cole's preliminary appearance, the court set bail and entered an order establishing conditions of release, including that Mr. Cole personally appear in court for "all hearings scheduled in this matter." Report of Proceedings (RP) at 155-57. Mr. Cole signed the order, acknowledging its terms. *Id.*; Ex. 24.

On September 29, 2014, Mr. Cole appeared in court for a readiness hearing. The court entered a new scheduling order, setting trial for October 21, 2014, and a new readiness hearing for October 15, 2014. Mr. Cole signed, acknowledging the order.

Mr. Cole failed to appear for the readiness hearing on October 15, so the court struck the trial date and issued a warrant for his arrest. Mr. Cole did appear in court the

2

next day, October 16, for a CrR 3.5 hearing that had been specially set, but by the time of Mr. Cole's appearance, the CrR 3.5 hearing had been stricken because of his failure to appear the day before. The State amended the information to include a count of bail jumping. Mr. Cole later explained that he did not appear in court on October 15 because upon receiving notice of the October 16 hearing, he thought it was a rescheduling of the October 15 hearing.

Five days after his failure to appear, Mr. Cole and his lawyer appeared in court on a motion to quash the arrest warrant. The court quashed the warrant and set a new trial date for December 16, 2014, setting the readiness hearing for December 1, 2014. Mr. Cole signed, acknowledging the order.

On December 1, Mr. Cole again failed to appear for his readiness hearing. The court issued another warrant for his arrest and the State amended the information to include a second count of bail jumping.

Mr. Cole later explained that he failed to appear in court on December 1 because while en route to court that morning from his home on Badger Mountain, he "put [his] vehicle into a ditch." RP at 232. According to him, "I didn't have any transportation because my vehicle was in the ditch. And because it was Monday early, the roads up there hadn't been plowed and so I had to go find somebody to help me get my truck out of the ditch." RP at 233.

3

The case ultimately proceeded to trial on June 18, 2015. As an affirmative defense to the December 1 bail jumping charge, Mr. Cole asserted that the automobile mishap that morning prevented him from appearing. *See* RCW 9A.76.170(2) ("uncontrollable circumstances" defense). He sought to offer evidence that he had appeared in court for the criminal case on 23 other occasions as support for his claim that he wasn't able to make it to court on December 1. The State objected on grounds of relevance and the court sustained the objection.

During closing argument, Mr. Cole's lawyer attempted to explain the State's burden of proving guilt beyond a reasonable doubt by contrasting it with other burdens of proof. The State objected when he began to discuss the "clear and convincing" burden of proof, on the basis that it was outside of the instructions. RP at 307-08. The court sustained the objection.

During the State's closing argument, the prosecutor argued that Mr. Cole was not entitled to the affirmative defense of "uncontrollable circumstances." The statutory defense does not apply if a defendant contributes to creating the circumstances that prevent his appearance, in reckless disregard of the requirement to appear. The prosecutor asked the jurors whether someone living on a mountain shouldn't know that "between November 1st and March 31st, you might want to put some studs on your car . . . or you might want to put some chains on your car? . . . [And] maybe you should work on your car, maybe get your car prepped[?]" RP at 300. Mr. Cole's lawyer did not

4

object, but in his own closing argument he told jurors that the State's attorney "made several remarks that were not supported by the evidence" reminding them that closing arguments are not evidence. RP at 305.

The jury found Mr. Cole guilty on all three counts. The court imposed a standard range sentence totaling six months and ran the sentences concurrently. It imposed $1,850 in legal financial obligations (LFOs), observing:

> You previously testified that you work, I think collecting firewood, and have a job selling that and so the Court believes that in fact you can make payments on these financial obligations and have this paid off over time.

RP at 347.

Mr. Cole appeals.

## ANALYSIS

Mr. Cole makes the following assignments of error on appeal: that (1) the State presented insufficient evidence on one of the counts of bail jumping, (2) the trial court erred when it excluded evidence of 23 other occasions when Mr. Cole appeared in court, (3) the trial court erred when it prohibited defense counsel from discussing the clear, cogent, and convincing burden of proof, (4) the prosecutor improperly argued facts not in evidence during closing argument, (5) RCW 69.50.4013 and RCW 9A.76.170, under which Mr. Cole was charged, violate due process, and (6) the trial court improperly

imposed LFOs on Mr. Cole.[1]  We address the assignments of error in the order stated

*I. Evidence Sufficiency: Bail Jumping on October 15*

Mr. Cole first challenges the sufficiency of the evidence to support his conviction

of the first count of bail jumping.  He challenges its sufficiency to support only the first

element: "That on or about the 15th day of October, 2014, the defendant failed to appear

before a court."  Clerk's Paper's (CP) at 44.  He argues that his appearance before the

court on October 16, 2014, was "on or about October 15."

In reviewing a challenge to the sufficiency of evidence, we review the evidence in

the light most favorable to the State to determine "'whether any rational fact finder could

have found the essential elements of the crime beyond a reasonable doubt.'" *State v.

Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *State v. Wentz*, 149 Wn.2d

342, 347, 68 P.3d 282 (2003)).  "In claiming insufficient evidence, the defendant

necessarily admits the truth of the State's evidence and all reasonable inferences that can

be drawn from it." *Id.* at 35.

Because October 16 is "on or about" October 15, Mr. Cole argues that the State

did not prove that "Mr. Cole *did not appear in court* 'on or about' October 15th"—a

slight, but critical, misstatement of the instruction.  Br. of Appellant at 9 (emphasis

---

[1] Mr. Cole also argues cumulative error, but since we find no error or abuse of discretion affecting his convictions of possession of a controlled substance and the first bail jumping count, there can be no "cumulative" error as to the convictions we affirm.

added). We agree that October 16 is "on or about" October 15. But proving that Mr. Cole did not appear in court at all on or about October 15 is different from proving that Mr. Cole, who had notices of hearings scheduled at specific times on October 15 and 16 and only appeared for one, "failed to appear before a court" during that period of time.

The jury had been instructed that "[a] person commits the crime of bail jumping when he or she fails to appear as required . . . with knowledge of the requirement of a subsequent personal appearance before a court." CP at 43. Undisputed evidence established that Mr. Cole had two court appearance obligations on or about October 15, and that he failed to appear for the first. That was sufficient to prove the required element that "on or about the 15th day of October, 2014, the defendant failed to appear before a court." CP at 44.

## II. Excluding Evidence of 23 Appearances

Mr. Cole next argues the trial court erred when it sustained an objection to the relevance of evidence that he had made 23 other appearances in court in connection with his criminal case. On appeal, he argues the evidence was relevant "to show that he did not knowingly or intentionally fail to appear on October 15 and December 1." Br. of Appellant at 11. He argues the exclusion was not harmless in part because "credibility was a key issue at trial on all three counts," and the evidence bore on "trustworthiness," which the prosecutor treated as key in argument to the jury. *Id.* at 12.

At trial, however, Mr. Cole offered the evidence as bearing only on the charge of bail jumping on December 1. He asserted the affirmative defense of uncontrollable circumstances only as to that count, and the jury was so instructed. *See* RP at 12; CP at 47. In explaining why he was offering the evidence, he told the court it was in connection with the failure to appear on December 1:

> Q This case has been pending for almost a year. How many times have you been to court on this case?
> [PROSECUTOR]: Objection, relevance.
> [DEFENSE COUNSEL]: Well, it is relevant because it goes to whether or not he had knowledge and intentionally missed a court date or whether or not he wasn't able to make it to court **on December 1st.**
> THE COURT: The objection is sustained.

RP at 234 (emphasis added). At trial, Mr. Cole's lawyer did not argue that the evidence of the 23 appearances was relevant to the missed court date on October 15. He did not claim to be offering the evidence on issues of credibility or trustworthiness. We will not consider those arguments for the first time on appeal. RAP 2.5(a).

Turning to the objection that *was* made in the trial court, evidence of the 23 appearances was not relevant to the elements the State was required to prove. Bail jumping has a knowledge element, but it falls short of intentional failure to appear. RCW 9A.76.170(1) defines the crime of bail jumping:

> Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state . . . and who fails to appear . . . as required is guilty of bail jumping.

8

Thus the knowledge element the State must prove is that the defendant was "released . . . or admitted to bail with knowledge of the requirement of a subsequent personal appearance."

The State is not required to prove that when the hearing date arrives, the defendant still has it in mind. *See State v. Ball*, 97 Wn. App. 534, 536-37, 987 P.2d 632 (1999) (finding knowledge where defendant signed a document that set the date for his next court appearance). And "'I forgot' is not a defense to the crime of bail jumping." *State v. Carver*, 122 Wn. App. 300, 306, 93 P.3d 947 (2004).

But to say that evidence of 23 prior appearances was not relevant to the State's case is not to say that it was irrelevant to Mr. Cole's affirmative defense. "Uncontrollable circumstances" are the one, sufficient, excuse for a failure to appear, unlike other insufficient excuses such as "I forgot." RCW 9A.76.170(2) provides:

> It is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and that the person appeared or surrendered as soon as such circumstances ceased to exist.

An automobile accident is an "uncontrollable circumstance." RCW 9A.76.010(4). A defendant must establish the affirmative defense of uncontrollable circumstances by a preponderance of the evidence. *See, e.g., State v. Jeffrey*, 77 Wn. App. 222, 225, 889 P.2d 956 (1995).

9

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "The threshold to admit relevant evidence is very low[; e]ven minimally relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).

"A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion." *Id.* at 619. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *Teter v. Deck*, 174 Wn.2d 207, 215, 274 P.3d 336 (2012).

Evidence of Mr. Cole's 23 other appearances has a tendency to make his contention that an auto accident prevented him from appearing on December 1 more probable than if he had a lesser track record for court appearances. *Cf. Allard v. Nw. Contract Co.*, 64 Wash. 14, 17, 116 P. 457 (1911) (trial court erred in excluding evidence of plaintiff's prior conduct during quarry blasts, which "afforded some ground for belief that such might have been his conduct on this occasion"). Indeed, if Mr. Cole had a poor track record for appearances, the State might well seek to offer evidence of that history to challenge his claim of uncontrollable circumstances on December 1. *Cf. United States v. Luttrell*, 612 F.2d 396 (8th Cir. 1980) (in prosecution for failure to file tax returns, Federal Rule of Evidence 406 supported admission of failure to file earlier returns).

Mr. Cole's lawyer's argument at trial for why evidence of the prior appearances was relevant was partly correct and partly wrong. It was wrong insofar as he argued, "[i]t goes to whether or not he had knowledge and intentionally missed a court date." It was right insofar as he argued, "[i]t goes to . . . whether or not he wasn't able to make it to court on December 1st." RP at 234. A reasonable juror could infer from 23 prior appearances that Mr. Cole was not allowing run-of-the-mill conflicts or inconveniences to interfere with his court appearances. Because that would make it more likely that something uncontrollable came up on December 1, it was error to exclude the evidence as irrelevant.[2]

Since evidentiary errors are not of constitutional magnitude, they are harmless unless "'within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997) (quoting *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)). An error in an evidentiary ruling is harmless if "the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole." *Id.*

---

[2] The State addresses "character evidence" in its response brief, which was fairly invited by the appellant's argument for the first time on appeal that the evidence of the 23 appearances went to Mr. Cole's character. By limiting ourselves to Mr. Cole's objection in the trial court, we need not discuss character evidence issues. The 23 appearances do not bear on Mr. Cole's character, which could be bad or good. They only bear on the fact that he had a pattern of appearing at court when required.

We do not find this error to have been harmless. Mr. Cole presented third party evidence that he appeared in court as soon as possible after the missed appearance on December 1. But he presented no evidence of his early morning accident other than his own testimony. His trial lawyer would reasonably have expected that evidence of Mr. Cole's practice of appearing would be admitted. Within reasonable probabilities, the verdict on the December 1 bail jumping charge would have been materially affected had the evidence been admitted. We reverse the conviction on count three and remand for a new trial on that count.

### III. Closing Argument re Burdens of Proof

Mr. Cole next argues the trial court erred when it sustained a State objection to its argument comparing the criminal burden of proof to burdens of proof in civil cases.

Mr. Cole's lawyer began by telling jurors,

[W]hat I want to talk to you about is the fact that this is a criminal matter and beyond a reasonable doubt, that's the highest standard of proof that we have in the law.

RP at 306-07. When he contrasted that with "preponderance of the evidence," he drew an objection from the State that the court overruled because "[t]he jurors have the instructions in front of them regarding the definitions," and "[T]his is argument." RP at 307. "Preponderance of the evidence" had been defined for jurors because it was the burden Mr. Cole bore in proving his affirmative defense to the December 1 bail jumping charge.

12

When Mr. Cole's lawyer turned to "[t]he next level of proof that we have in the law[,] . . . clear and convincing proof," however, the State's objection that "[a]rgument is outside the instructions" was sustained. RP at 307-08. The jurors had received no instruction on clear and convincing evidence.

During closing, "argument by counsel must be restricted to the facts in evidence and the applicable law, lest the jury be confused or mislead." *State v. Perez-Cervantes*, 141 Wn.2d 468, 474, 6 P.3d 1160 (2000). Accordingly, "[c]ounsel's statements . . . must be confined to the law as set forth in the instructions to the jury." *Id.* at 475. Burdens of proof are matters of law. A trial court's decision to limit the scope of closing argument is reviewed for abuse of discretion. *State v. Frost*, 160 Wn.2d 765, 771, 161 P.3d 361 (2007).

Members of the panel recognize that the argument Mr. Cole sought to advance is not uncommon in criminal trials and in many cases comes in without objection. When the burdens are correctly stated and compared, such argument will not mislead a jury. Nonetheless, where Mr. Cole had not sought and obtained a court instruction explaining the intermediate clear and convincing standard of proof, it was the trial court's prerogative to strictly enforce the principle that the court, not the lawyers, provides jurors with the applicable law.

*State v. Osman*, 192 Wn. App. 355, 377, 366 P.3d 956 (2016), which Mr. Cole cites as supporting his challenge, is inapposite. There, the trial court abused its discretion

13

when it limited the defendant's nonmisleading discussion of "abiding belief," a term that appeared in the jury's instructions. Here, the trial court did not abuse its discretion.

### *IV. Prosecutor's Closing Argument*

Mr. Cole next contends the prosecutor argued evidence outside the record during closing argument when he implied to jurors that Mr. Cole was reckless in failing, before December 1, 2014, to mount studded tires, place chains on his tires, or otherwise "prep" his car for winter driving. On that basis, he argued that Mr. Cole could not assert the uncontrollable circumstances defense to the December 1 bail jumping charge.

Since we reverse that conviction and remand, we need not address the issue. Should it arise in a retrial, it can be addressed at that time.

### *V. Due Process Challenges: RCW 69.50.4013 and RCW 9A.76.170(1)*

Mr. Cole next argues that the two statutes under which he was convicted, RCW 69.50.4013 (controlled substance violations) and RCW 9A.76.170(1) (bail jumping) violate due process because they require the defendant to prove the absence of a culpable mental state rather than requiring the State to prove a culpable mental state beyond a reasonable doubt. At one point in his brief, he contends that criminalizing conduct without a mens rea requirement violates due process by relieving the State of the burden of proving guilt beyond a reasonable doubt. Br. of Appellant at 20-21. Elsewhere, he concedes such legislation is merely disfavored and subjected to strict scrutiny in cases

such as *Morisette v. United States*, 342 U.S. 246, 250, 72 S. Ct. 240, 96 L. Ed. 288 (1952). Br. of Appellant at 23.

We review constitutional challenges de novo. *In re Welfare of A.W.*, 182 Wn.2d 689, 701, 344 P.3d 1186 (2015). "[I]t is well established that statutes are presumed constitutional and that a statute's challenger has a heavy burden to overcome that presumption; the challenger must prove that the statute is unconstitutional beyond a reasonable doubt." *Sch. Dists.' All. for Adequate Funding of Special Educ. v. State*, 170 Wn.2d 599, 605, 244 P.3d 1 (2010).

### A. RCW 69.50.4013

RCW 69.50.4013 makes it unlawful to possess a controlled substance without a valid prescription or unless otherwise authorized by chapter 69.50 RCW. It contains no mens rea requirement. *State v. Bradshaw*, 152 Wn.2d 528, 539, 98 P.3d 1190 (2004). In not requiring the State to prove either knowledge of possession of the substance or its illicit nature, the Washington statute is said to be exceptional. *State v. Adkins*, 96 So. 3d 412, 429 (Fla. 2012) (Pariente, J., concurring) (identifying Washington and North Dakota as the only two states to eliminate knowledge entirely from the offense of possession of a controlled substance; observing that North Dakota thereafter amended its statute to include "willfulness.").

Yet in Washington, "[o]nce the State establishes prima facie evidence of possession, the defendant may . . . affirmatively assert that his possession of the drug was

15

'unwitting, or authorized by law, or acquired by lawful means in a lawful manner, or was otherwise excusable under the statute.'" *State v. Staley*, 123 Wn.2d 794, 799, 872 P.2d 502 (1994) (quoting *State v. Morris*, 70 Wn.2d 27, 34, 422 P.2d 27 (1966)). "The defense of 'unwitting' possession may be supported by a showing that the defendant did not know he was in possession of the controlled substance" or "that he did not know the nature of the substance he possessed." *Id.*

In *Bradshaw*, the defendant argued that RCW 69.50.4013 implicitly "requires knowledge and the affirmative defense of unwitting possession improperly shifts the burden of proof." 152 Wn.2d at 534. Our Supreme Court rejected the argument:

> The State has the burden of proving the elements of unlawful possession of a controlled substance as defined in the statute—the nature of the substance and the fact of possession. Defendants then can prove the affirmative defense of unwitting possession. This affirmative defense ameliorates the harshness of a strict liability crime. It does not improperly shift the burden of proof.

*Id.* at 538 (citations omitted).

Division Two of our court recently rejected the same due process challenge to RCW 69.50.4013 advanced by Mr. Cole, pointing out that a categorical attack on strict liability crimes lacks historical support in both the United States Supreme Court and Washington courts:

> Strict liability crimes—crimes with no mens rea requirement—do not necessarily violate due process. "We do not go with Blackstone in saying that 'a vicious will' is necessary to constitute a crime, for conduct alone without regard to the intent of the doer is often sufficient. There is

16

wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." *Lambert v. California*, 355 U.S. 225, 228, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957). Our Supreme Court repeatedly has stated that the legislature has the authority to create strict liability crimes that do not include a culpable mental state.

Our Supreme Court twice has directly addressed whether the elements of possession of a controlled substance under prior versions of RCW 69.50.4013 contains a mens rea element. In both cases, the court held that the legislature deliberately omitted knowledge and intent as elements of the crime and that it would not imply the existence of those elements. The court did not express any concerns in either *Bradshaw* or [*State v.*] *Cleppe*[, 96 Wn.2d 373, 635 P.2d 435 (1981)] that allowing a conviction for the possession of a controlled substance without showing intent or knowledge somehow was improper.

*State v. Schmeling*, 191 Wn. App. 795, 801-02, 365 P.3d 202 (2015) (some citations omitted). Notwithstanding Mr. Schmeling's citation of two cases from other jurisdictions holding that strict liability offenses violate due process, the *Schmeling* court found them unpersuasive, "given our Supreme Court's repeated approval of the legislature's authority to adopt strict liability crimes and the express findings in *Bradshaw* and *Cleppe* that the possession of controlled substances statute contains no intent or knowledge elements." *Id.* at 802.

Mr. Cole nonetheless claims that three non-Washington decisions support his argument that RCW 69.50.4013 violates due process. The first, the United States Supreme Court's 1957 decision in *Lambert*, was cited in the excerpt in *Schmeling*, above, for its support of the "wide latitude in lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." 191 Wn. App. at 801. While

17

*Lambert* found that a Los Angeles felony registration ordinance violated due process, it is clearly distinguishable, having turned on a critical characteristic of that ordinance: it criminalized wholly passive conduct—the failure to register with Los Angeles police as a felon after being or remaining in the city for a period of more than five days—without even requiring that the individual have notice of the registration requirement. 355 U.S. at 225-230.[3] As the Supreme Court observed 25 years after deciding *Lambert* (and 34 years before the decision we reach today), "[*Lambert*'s] application has been limited, lending some credence to Justice Frankfurter's colorful prediction in dissent that the case would stand as 'an isolated deviation from the strong current of precedents—a derelict on the waters of the law.'" *Texaco, Inc. v. Short*, 454 U.S. 516, 538 n.33, 102 S. Ct. 781, 70 L. Ed. 2d 738 (1982) (citing 355 U.S. at 232).

RCW 69.50.4013 does not unlawfully criminalize wholly passive conduct. A defendant does not unlawfully possess a controlled substance in Washington unless he or

---

[3] A recent law review article on *Lambert* states, as its objective, "to suggest that its holding can be cabined by a narrow and defensible, and we believe correct, rationale[:] . . . that *Lambert* should be understood as a variant on the vagueness doctrine." Peter W. Low & Benjamin Charles Wood, Lambert *Revisited*, 100 Va. L. Rev. 1603, 1604-05 (2014).

> The Los Angeles ordinance at issue in Lambert was an illustration of law by cop, not law by law. It authorized arrests without probable cause, and diversion of the arrestee to another crime if interrogation and search did not establish the motivating offense. It authorized gratuitous, arbitrary, and unfair punishment for behavior the state did not need to prohibit in order to accomplish any conceivable legitimate public protection objective.

*Id.*

she obtains or is placed in possession of a controlled substance which he or she does not then discard. And unwitting possession remains an affirmative defense.

The other two decisions on which Mr. Cole relies were not addressed in *Schmeling.* They are *Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp. 2d 1289, 1296 (M.D. Fla. 2011) (*Shelton* I), *rev'd*, 691 F.3d 1348 (11th Cir. 2012), and *Adkins*, 96 So. 3d 412, both of which involve prosecution of controlled substance violations under a Florida statute.

Mr. Shelton was convicted in a Florida state court of delivery of cocaine. *Shelton* I, 802 F. Supp. 2d at 1295-96. The Florida statute that applied required the State to prove knowing possession of a substance, but not knowledge that the substance was illicit. *Id.* at 1294 (citing FLA. STAT. § 893.101). Any claim that the defendant did not know that the substance he possessed was illicit was an affirmative defense. *Id.* Mr. Shelton appealed in state court several times, challenging the constitutionality of the statute on due process grounds. *Id.* at 1296. His conviction was affirmed and further relief denied. *Id.*

He then filed for federal habeas corpus relief based on his due process challenge. *Id.* The district court granted the petition in part. Relying on cases in which courts had inferred a mens rea element in a criminal statute in order to avoid any due process infirmity, it found the Florida statute unconstitutional because it either imposed strict

liability, or improperly shifted the burden to the defendant to prove lack of knowledge. *Id.* at 1296-1308.

The Eleventh Circuit Court of Appeals reversed. In the interim between the district court's decision and its own, the Florida Supreme Court had rejected a due process challenge to the Florida law in *Adkins*. The Eleventh Circuit court held that decisions of the Florida state courts in Mr. Shelton's case were entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, and in order for Mr. Shelton to prevail,

> he must be able to point to Supreme Court precedent clearly establishing that the Due Process Clause forbids the partial elimination of mens rea as an element of crimes analogous to those in Florida's Drug Abuse Prevention and Control Act, beyond any possibility for fairminded disagreement. That is a tall order, and as it happens, an impossible one.

*Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348, 1354 (11th Cir. 2012) (*Shelton* II). It pointed out that not only had the U.S. Supreme Court never addressed the due process issue in Mr. Shelton's favor, but that "a number of the Court's cases cut Florida's way, many of which the Florida Supreme Court relied on" in upholding the constitutionality of the controlled substances law in *Adkins*. *Id.* at 1355 (footnote omitted). It noted that "only once, in *Lambert*," had the Supreme Court held a criminal provision unconstitutional under the due process clause "for failing to require sufficient mens rea." *Id.* at 1354. The constitutional avoidance cases on which the district court relied, it

20

added, "are not square due process holdings. Rather, those cases avoid the due process question, sometimes invoking the rule of lenity." *Id.* at 1355.

The district court's decision in *Shelton* I is no longer good law, then, albeit based on the deference issue. Its reasoning is unpersuasive.

Finally, Mr. Cole relies on the opinion of a single concurring justice in the Florida Supreme Court's decision in *Adkins*—Justice Pariente—who reasoned that the Florida statute was constitutional only because (1) (like Washington's statute) it permits a defendant to assert lack of knowledge of the illicit nature of the controlled substance as an affirmative defense and (2) (unlike Washington's statute) "continues to require the State to prove that a defendant had knowledge of the *presence* of the controlled substance." 96 So. 3d at 424 (Pariente, J., concurring). The reasoning that garnered the most support on the Florida Supreme Court was that of the three-member plurality, who focused only on the availability of an affirmative defense that would protect against criminalizing entirely conduct—reasoning under which RCW 69.50.4013 passes constitutional muster.

Mr. Cole characterizes Justice Pariente as the "deciding justice" in *Adkins*. Br. of Appellant at 24. She was not. While the decisions uphold the constitutionality of the Florida statute, they offer no majority holding as to why the statute is constitutional. *See* Robert Batey, *Mens Rea and Constitutional Law: A Report Card for the Florida Supreme Court in* State v. Adkins, 43 Stetson L. Rev. 3, 13, 15 (2013) (suggesting that the justice

21

who concurred only in the result "surveyed what his colleagues had written and decided to give none of it precedential value"); *United States v. Epps*, 707 F.3d 337, 348 (D.C. Cir. 2013) (under *Marks v. United States*, 430 U.S. 188, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977)), the holding of a fragmented court is the position concurring on the narrowest grounds only where "'the concurrence posits a narrow test to which the plurality must *necessarily agree as a logical consequence* of its own, broader position'" (quoting *King v. Palmer*, 950 F.2d 771, 782 (D.C. Cir. 1991)). No other justice agreed with the reasoning of Justice Pariente on the issue presented here.

Given our Supreme Court's decisions in *Bradshaw* and *Cleppe*, Division Two's decision in *Schmeling*, the authorities they cite, and the reasoning set forth above, we do not find Justice Pariente's opinion persuasive. Mr. Cole does not demonstrate that RCW 69.50.4013 is unconstitutional.

### B. *RCW 9A.76.170(1)*

In arguing that RCW 9A.76.170(1) violates due process, Mr. Cole relies not only on the argument, just rejected, that a criminal statute lacking a mens rea element unconstitutionally shifts the burden of proof,[4] but he also argues, incorrectly, that the statute requires a defendant to negate an element of the crime.

---

[4] And as previously discussed, RCW 9A.76.170(1) contains a knowledge requirement; it is not fairly characterized as a strict liability crime.

22

The affirmative defense of uncontrollable circumstances does not negate an element of bail jumping. To prove bail jumping, the State must show that "the defendant (1) was held for, charged with, or convicted of a particular crime; (2) had knowledge of the requirement of a subsequent personal appearance; and (3) failed to appear as required." *State v. Downing*, 122 Wn. App. 185, 192, 93 P.3d 900 (2004). A defendant who shows that an uncontrollable circumstance prevented him from appearing does not negate proof that he was (1) charged with a crime, (2) had notice of the requirement to appear, or (3) failed to appear.

> The legislature does not violate a defendant's due process rights when it allocates to the defendant the burden of proving an affirmative defense when the defense merely "'excuse[s] conduct that would otherwise be punishable.'" *Smith* [*v. United States*, ___ U.S. ___], 133 S. Ct. [714,] 719[, 184 L. Ed. 2d 570 (2013)] ([first] alteration in original) (quoting *Dixon v. United States*, 548 U.S. 1, 6, 126 S. Ct. 2437, 165 L. Ed. 2d 299 (2006)); *see also Martin v. Ohio*, 480 U.S. 228, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987).

*State v. W.R.*, 181 Wn.2d 757, 762, 336 P.3d 1134 (2014).

Neither statute violates due process.

## VI. LFOs

Finally, Mr. Cole argues that insufficient evidence supports the trial court's finding that he has the ability to pay LFOs, and that the imposition of LFOs on indigent defendants—even mandatory LFOs—violates RCW 10.01.160(3), GR 34, the principles

23

of equal protection and substantive due process, and the right to travel. The court imposed a total of $1,850 in LFOs.[5]

Mr. Cole was sentenced on June 24, 2015, several months after our Supreme Court's decision in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). At the time of sentencing, the trial court had in mind Mr. Cole's trial testimony that he was 46 years old, had graduated from high school, joined the military, served in the Gulf War, was honorably discharged, and, at the time of his arrest, was employed "recovering timber up on Badger Mountain," by virtue of "a grant up there with the Forest Service." RP at 220.

As a preliminary matter, we consider whether to review the issue. Mr. Cole made no objection to the trial court's finding that he had the present and future ability to pay, and thereby failed to preserve a claim of error. RAP 2.5(a); *Blazina*, 182 Wn.2d at 833 ("[u]npreserved LFO errors do not command review as a matter of right"). The rationale for refusing to review an issue raised for the first time on appeal is well settled: issue preservation helps promote judicial economy by ensuring "that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011).

---

[5] "A $500 crime victim's compensation, $200 in court costs, a $450 public defender fund reimbursement, a $250 jury fee, a $100 DNA (deoxyribonucleic acid) collection fee, a $100 crime lab fee and a $250 Wenatchee P.D. drug fund assessment." RP at 347. The discretionary or mandatory character of the jury fee remains unclear. *See State v. Clark*, No. 32839-2-III, slip op. at 4 (Wash. Ct. App. Sept. 8, 2016), http://www.courts.wa.gov/opinions/pdf/328392_pub.pdf.

24

An exception to the issue preservation requirement exists for "manifest error affecting a constitutional right." RAP 2.5(a)(3). To qualify for the exception provided by RAP 2.5(a)(3), an appellant must demonstrate "(1) the error is manifest and (2) the error is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). An error will be considered manifest when there is actual prejudice, meaning a plausible showing by the appellant that the asserted error had practical and identifiable consequences in the trial. *State v. Irby*, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015), *review denied*, 184 Wn.2d 1036 (2016). "[T]he focus of the actual prejudice [inquiry] must be on whether the error is so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100.

While Mr. Cole includes several constitutional challenges to the LFOs imposed, he does not address whether any errors were manifest or point to identifiable consequences in the trial. Because Mr. Cole unquestionably waived his right to appeal the trial court's finding of ability to pay, we decline to review that issue. Because he fails to support any contention that constitutional errors, if any, were manifest, we do not consider his constitutional challenges further. *See* RAP 10.3(a)(6) (requiring a party's brief to include "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record").

We reverse Mr. Cole's conviction on count III, otherwise affirm, and remand for proceedings consistent with this opinion.

No. 33575-5-III
*State v. Cole*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, J.

WE CONCUR:

Pennell, J.

Lawrence-Berrey, A.C.J.

26